ZELIA PENNINGTON, ADMINISTRATRIX, v. THE DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY COMPANY.

*Railroad companies—Injury to employé—Contributory negligence—Pleading—Variance—Appeal.*

1.  A plaintiff must recover under the material allegations of his declaration; and there is a fatal variance between a declaration in a negligence case framed upon the theory that a freight train, which plaintiff's decedent, a switchman, mounted for the purpose of uncoupling a car, was moving backward, uncontrolled by either brakeman or engineer, and without orders, at the time of the accident, and proof that the train was moving forward under the order of the conductor.

2.  Where a switchman, who is acquainted with all of the surroundings, attempts to descend a car ladder for the purpose of uncoupling the car, knowing that unless the train is stopped he must strike a post less than 20 feet distant, and without knowing that his signal to stop the train has been received and acted upon, and in order to give which he was obliged to look towards the engine, and must have seen the steam emitted therefrom, which is alleged in the declaration to have prevented the engineer from seeing the signal, he must be held to have assumed the risk and danger in descending the ladder.

3.  Where the record fails to show the positions taken by counsel on the trial of a case in which the court directs a verdict in favor of the defendant upon his own motion, the defendant is not barred from raising the question of a variance between the declaration and the proofs in the Supreme Court.

Error to Wayne. (Brevoort, J.) Argued February 17 and 18, 1892. Decided March 4, 1892.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Thomas Hislop (Ed. E. Kane,* of counsel), for appellant, contended:

1. The yard-master's knowledge of the defective condition of the engine was the knowledge of the defendant; citing *Lyttle v. Railway Co.*, 84 Mich. 289, and cases cited.

2. It was defendant's duty to inspect its engines, and a failure to do so was negligence; and when to this is added its knowledge for months of the defects in the engine, and its promise to the yard-master that they would be remedied, which promise was not kept until the life of an employé is sacrificed, such negligence should be qualified by some strong adjective; citing *Weiden v. Electric Light Co.*, 73 Mich. 268; *Johnson v. Spear*, 76 Id. 139; *Van Dusen v. Letellier*, 78 Id. 492; *Morton v. Railroad Co.*, 81 Id. 423.

3. Decedent had a right to rely upon his signal being obeyed, and to govern himself accordingly; citing *Railroad Co. v. Martin*, 41 Mich. 667; *Engel v. Smith*, 82 Id. 1, and cases cited.

4. There being no eye-witness to the accident, it will be presumed, in the absence of evidence to the contrary, that the decedent used ordinary care and caution, which presumption is sufficient to permit a recovery upon showing negligence on the part of the defendant; citing *Adams v. Iron Cliffs Co.*, 78 Mich. 271, and authorities there collected; and surely the question that contributory negligence is for the jury is established in this State; citing *Brezee v. Powers*, 80 Mich. 182.

*L. C. Stanley*, for defendant.

GRANT, J. Plaintiff's decedent was fatally injured December 17, 1888, in the freight-shed of the defendant, and died shortly after. He was a switchman, and the switching crew, aside from the engineer and fireman, consisted of one Willis, the conductor, and one Pratt, another switchman. They were engaged in switching cars at the time. The train consisted of about 20 cars. The engine, with 12 cars attached, was moving out of the shed upon an up grade. Four rows of posts extended lengthwise of the shed, and 20 feet apart, to support the roof. The engine and four cars were outside the shed. Pratt stood upon the fourth car from the engine. The track on which the cars were running at the time was north of the second row of posts from the north. The distance between the car on which the deceased was and the post

was 13 inches, and between the ladder on the side of the car, down which it is claimed the deceased was going, and the post, 11 inches. North of this track was a platform about level with the floors of the freight-cars, and very close to it. The deceased and Willis stood upon this platform, in the vicinity of the fifth post from the entrance to the shed. The train was then moving out. Willis directed the deceased to cut off another car. Willis could see neither the engineer nor Pratt to give the signal. It therefore became necessary for the deceased to climb upon the train, give the signal to stop the train, and at the proper time to uncouple the car. He climbed upon the car and gave the signal, which Pratt saw, and undertook to communicate to the engineer; but the engineer evidently did not see it, because of the steam between him and Pratt. The car on which deceased then stood was the seventh or eighth from Pratt, and the eleventh or twelfth from the engine. The deceased did not wait to determine whether his signal had been received by the engineer, but turned and commenced his descent down the side of the car. Willis last saw him before the accident, and testified that he was then going across the car towards the ladder. Willis heard the deceased cry out, ran around the rear of the train, and found him lying between the fifth post from the entrance and the trucks of the car. Pratt, seeing the engineer did not receive his signal, ran along the top of the cars and notified him. Upon stopping the train and receiving no further signal, Pratt went back to ascertain what the difficulty was. The deceased had been in the employ of the company at this place for about five months, was familiar with the situation, and was an experienced railroad man.

The negligence alleged is that the defendant was then using an old and defective engine, which permitted

the escape of steam, and thus prevented the engineer from seeing the signals given by those in charge of the train. After setting forth the duty of the company, and its neglect, the declaration then proceeds to state that said deceased,—

"In pursuance of the order of said Willis, was climbing down the south side of one of said cars to uncouple the same from the next car, the said train of cars, and all of them, being then stopped and standing still; and owing to the grade on said tracks, said cars began to move back in said freight-shed, on the northerly track therein, some distance from the fourth post from the entrance of said shed, when at that moment the said Willis communicated to the said engineer, Landon, by means of another employé, standing on the top of one of said cars, some distance outside of said shed, and signaled to said engineer to stop said train, so that said Pennington could descend safely on the south side of said car, and uncouple said car from the car next to it; and because of the said defects in the throttle valve and valve stems of said old, defective, unsafe, and dangerous engine, and of the dense quantities of steam escaping therefrom, in consequence of said defects, the said engineer was unable to see and unable to comprehend said signals, and unable to stop said train, and did not stop said train, and by reason thereof, and because of said post being so close to said cars, as aforesaid, the said John W. Pennington was caught between said post and said car, and crushed and greatly bruised and injured."

The train was moving at the rate of from three to four miles an hour.

There are two insurmountable objections to the plaintiff's recovery.

1. There is a fatal variance between the declaration and the proofs. The declaration is framed upon the theory that the cars had stopped; that they had commenced to back up, on account of the down grade, while deceased was climbing down; that Willis, not the deceased, signaled to the engineer to stop them, so that he could

descend with safety and uncouple the car; and that owing to the defects in the engine the train was not stopped. Under this state of facts the cars were moving back, uncontrolled either by the brakeman or the engineer. No order to move back had been given. Both the engineer and the switchman would have known that the train was moving back without orders, and that it was their duty to stop it. A plaintiff must recover under the material allegations of his declaration. The proof is that the train was moving in the opposite direction under the order of the conductor. It needs no argument to demonstrate the variance.

It is insisted that this question was not raised in the court below, and therefore must not be considered here. The record does not disclose the positions taken by the defendant upon the trial, nor does it show that the court was requested to direct a verdict in its favor, which was done, when the plaintiff rested his case. The defendant is not, therefore, barred from raising it here.

2. The deceased was familiar with all the surroundings. He knew that the train was in motion; that, if it did not stop, he must strike this post, which was less than 20 feet distant. He chose to descend before knowing that his signal had been received and acted upon. He knew the engine, for he had worked with it at various times for from three to four years. Had he looked, he could have seen the steam, and he was obliged to look directly towards it in order to give Pratt the signal. Under these circumstances, he must be held to have assumed the risk and danger in descending the ladder. There is no evidence nor claim that the rules of the defendant required the deceased to descend from the cars when in motion in this dangerous place. Such requirement would be inhuman and cruel in the extreme. There is nothing in this record to show any necessity for such

action on the part of the deceased, nor that his duty required him to take it.

Judgment affirmed.

LONG and McGRATH, JJ., concurred with GRANT, J.

MORSE, C. J. I concur in the result; but, as it does not appear that the point of variance between proofs and declaration was raised in the court below, I think that the objection comes too late.

MONTGOMERY, J., concurred with MORSE, C. J.