WALLING v. CONGAREE CONSTRUCTION COMPANY.

1. NEGLIGENCE—NON-SUIT.—A non-suit cannot be granted for want of evidence where there is any relevant testimony to sustain the complaint, but in action to recover damages for the negligent killing by a master of one of his servants, if the uncontradicted testimony shows that the death was not the result of negligence for which the master was responsible, a non-suit would be proper.

2. IBID.—CONSTRUCTION COMPANY.—In action by an administratrix to recover damages from a construction company for the death of her intestate, who was employed by such company as the conductor of a material train engaged in the building of a new line of railroad, the testimony showed that the road-bed was not completed, and the track not fully tied or spiked, but that deceased had been for some time engaged in this work, and had in charge a train load of rails and ties for the construction of this road at the time that he lost his life from the spreading of rails on a portion of the track that had just been laid. The Circuit Judge having considered the case as if an action against a completed railroad and refused a non-suit, his order was reversed, and the cause remanded, with directions to treat the case as an action in behalf of one who was working under no superior orders, and with knowledge that the road-bed was not as safe as it should be when completed.

Before WITHERSPOON, J., Richland, April, 1893.

Action by Ada Walling, as administratrix, against the Congaree Construction Company for the negligent killing of her intestate on the line of the Columbia, Newberry and Laurens Railroad, in Newberry County. The action was begun April 14, 1892.

*Messrs. Lyles & Muller* and *John T. Sloan, jr.*, for appellant.

*Messrs. Melton & Melton* and *McDonald, Douglass & Obear*, contra.

May 24, 1894. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action by the plaintiff, as the administratrix of the estate of James T. Walling, deceased, suing for the benefit of herself and children, for damages for the negligent killing of the said intestate, her

husband, by the defendant corporation, "The Congaree Construction Company," while engaged in building a railroad from Columbia to Laurens Court House, in this State.

The complaint, among other things, stated as follows: "That the plaintiff is informed and believes that on December 13, 1890, the said James T. Walling was in the employment of the said defendant as conductor in charge of a material train running over said railroad; and that it was the duty of said defendant to provide a safe and secure road-bed and track for the use of the said train, and also good, safe, and secure machinery, appliances, and apparatus, so as not negligently to endanger the lives of the servants of the said defendant then and there employed.   That the plaintiff is further informed and believes, and so charges, that by reason of the carelessness and negligence of the said defendant, the said road-bed was negligently constructed by the said defendant, and the said track was by the said defendant negligently, insecurely, and unsafely constructed, in that the said road-bed was not made sufficiently wide, nor sufficiently hard, firm, and compact, and in that the iron rails upon the said track were not safely and securely fastened to the wooden crossties under the said rails; and that the same were ·in divers ways laid and constructed in a careless and negligent manner by the said defendant; the said defendant by such negligent acts exposing the employees at work on the said train to unnecessary risks.   That in consequence of the said negligent and careless conduct of the defendant the said train was on the said December 13, 1890, derailed and thrown down an embankment, throwing the said James T. Walling from the said train, and heaping upon him large quantities of railroad iron, thereby inflicting upon him mortal injuries, from which he died.   And the plaintiff avers that the said injuries were caused wrongfully, and by the gross negligence and carelessness of the said defendant in the premises aforesaid.   Wherefore the plaintiff demands judgment against the defendant for $10,000 and costs," &c.

The defendant corporation put in a general denial; and for a second defence alleged "that the material train referred to in the complaint, under the control of the plaintiff's intestate, was engaged in the laying of the track upon the railroad referred to

in the complaint, then in process of construction, and that it was the duty of the said intestate to supervise the construction of said railroad bed, to make the same safe and secure for the passage of the material train aforesaid, and if said accident was due in any wise to carelessness or negligence in the construction of said road-bed, the plaintiff's intestate was himself responsible therefor." The defendant corporation admitted that the above named James T. Walling was, at the time of his death, in the employment of said company; that the work of building the railroad, and the trains and other appliances, tools, and means for carrying on said construction and work, were, at the time and place of the injury, wholly and exclusively under the control of the construction company as an independent contractor. That the railroad company was in nowise connected with said means, tools, and appliances used in carrying on said work, &c.

The case came on for trial before the Circuit Judge and a jury. When the plaintiff had offered her testimony and rested, the defendant company made a motion for a non-suit, which was refused, without giving the reasons therefor, and the case proceeded. The defendant company offered evidence, and the plaintiff replied, which is all printed in the record. The jury rendered a verdict for the plaintiff for $3,000, and the defendant company now appeals to this court to reverse the judgment. There were no requests to charge nor exceptions to the charge, but the appeal comes here on the single "exception to the ruling of his honor, the presiding judge, refusing the defendant's motion for a non-suit, because there was no evidence to show negligence on the part of the defendant."

The only point raised by the defendant company is whether there was any evidence to show negligence on the part of the company, for which they should be held liable, which makes it necessary to consider the whole case. This court has often ruled that a non-suit for want of evidence should not be granted, when there is relevant evidence to go to the jury. But we do not understand that the meaning of this rule is, that every question involving a fact must go to the jury, whether there is, or is not, proof to support it. If there is no conflicting evidence, but all is on one side, it may be the

duty of the judge to direct a non-suit, as it would be a nugatory thing to send such an unsupported case to the jury. A high authority expresses the principle in this form: "The judge has to say whether any facts have been established by evidence, from which negligence *may* be inferred. The jurors have to say whether, from the facts, when submitted to them, negligence *ought* to be inferred," &c.[1] The negligence here spoken of must, of course, be that which *caused* the injury, and, in an action of this kind, where an employee is claiming damage against his employer for injuries incurred in his service, the negligence must be that of the employer and not that merely of a fellow-servant, within the meaning of the rule upon that subject. See *Hooper* v. *Railroad Company*, 21 S. C., 549.

It is true, that in the case of a chartered railroad company engaged in the ordinary operation of running its trains over a completed line, it is considered the essential contract duty of the company to furnish suitable machinery and appliances and keep them in repair, and the selection and retention of sufficient and competent servants, &c., and that under the head of "appliances" is included "a proper and safe way," or, as it is sometimes expressed, "a safe place to work," &c.; and if either of these duties have not been performed, there is an omission of duty on the part of the master, which affords at least *prima facie* evidence of negligence on his part, as these duties cannot be delegated to others so as to relieve the master from responsibility. But, at the same time, as was said by Thompson, in speaking of the duty of the master: "He is not, however, an insurer of the safety of his servants or the sufficiency of his machinery. His duty to them is discharged by the exercise of reasonable or ordinary care." 2 Thomp. Negl., 982.

The case seems to have been treated as an action by an employee against a railroad company, running their cars, in their ordinary business, on a finished line. Let us so consider it for a moment. We are not able to discover any testimony tending to show that there was a lack of the usual "appliances," "tools," "competent servants," &c., when the accident oc-

---

[1] Pierce on Railroads, 312.

curred. So the question is narrowed down to the consideration solely of the alleged "defective track and road-bed," which, ordinarily, it is the duty of the railroad company to maintain. There was proof on this subject, tending to support the allegation that "the road-bed was not sufficiently wide, nor sufficiently hard, firm, and compact; and in that the iron rails upon the said track were not securely fastened to the wooden cross-ties, under the rails," &c.; and for our present purposes we may assume that, in a case as stated against a railroad company, engaged in running their cars on a completed railroad, the evidence here might be sufficient to imply negligence on the part of the railroad, and make it proper for the Circuit Judge to refuse the non-suit and send it to the jury.

But is this a case of that kind? It is an action against a "construction company" for the benefit of the family of an employee who lost his life in the discharge of his duty on the work being constructed. We have not been able to find a case precisely in point as to the liability of a construction company for accidents occurring while constructing a railroad; but it would seem that, on principle, there must be a difference, especially as to maintaining a safe road-bed, between a railroad company already in operation and a construction company having no finished road of their own, and running no cars but a material train, engaged in the very work of constructing the road; which, in the process of construction, necessarily changes its condition every day, and, therefore, at no particular time can that condition possibly be known either to the company or their employees. There is another well settled rule, resulting from consideration of justice as well as of policy: "That one who engages in the employment of another for the performance of special duties and services for compensation takes upon himself the natural and ordinary risks incident to the performance of such services," &c. As is said in Patterson's Railway Accident Law, 343: "There is no implied obligation upon the part of the master to indemnify the servant against the ordinary risks of the service, and the servant, when injured, can only recover upon proof that the master knew of a danger which was unknown to the servant, and which the

master did not make known to him.  Upon this principle train
hands take the risk of injury from the negligent movement of
other trains.   *  *  *   From the derailment of their train by
its collision with trespassing cattle on an unfenced line.  *  *  *
From accumulations of ice and snow on or near the track;
from the jolting of cars on a siding by reason of worn rails
and used in its construction.   *  *  *   Train hands also take
the risk of injury from irregularities in the track and the
defects of appliances, whose condition is known to them and
of which they have not complained.   *  *  *   And of travel-
ing to the repair shop with a patently defective car; of falling
through a railway bridge in process of being repaired, while
walking over it in the discharge of their duty,'' &c., &c.

It seems that the intestate, Walling, had occupied the place
of conductor on the material train for some time before the
accident, and was perfectly familiar with the manner in which
the work was conducted.  As to his business, it does not
appear that he was acting under superior orders.  He deter-
mined for himself what load he should carry, and how far
down the unfinished track he could safely go to deliver the
iron rails with which his train was loaded.  It was reasonable
and certainly to be expected that an embankment, hastily
thrown up a few hours before, should not be as "hard,"
"firm," and "compact," as a settled track; and we can not
think that it was the duty of the "construction company" to
furnish such road-bed for their own material train.  The intes-
tate seems to have been an efficient officer, and was forward on
the train looking out and giving directions when the freshly
thrown up road-bed gave way under his train and, falling
under the iron rails, he lost his life.  This being the case, it
seems to us that the distinction between an accident which
occurred on a completed railroad and one which occurred upon
a train engaged in the process of construction, was ignored in
the trial below, and, therefore, we think that the case should go
back to the Circuit Court for a new trial, in order that the testi-
mony may be directed to the real point in the case, and that
the jury may be properly instructed as to this distinction
according to the views indicated above.

The judgment of this court is, that the judgment of the Circuit Court be reversed without prejudice, and the case remanded to the Circuit Court for a new trial.