ADSON A. MANNING, ADMINISTRATOR, ETC., v. THE CHICAGO & WEST MICHIGAN. RAILWAY COMPANY.

*Master and servant—Injury to brakeman—Cause of accident— Safe place—Construction train—Assumption of risk.*

1. Where, in an action against a railroad company for the negligent killing of a brakeman, there is an utter lack of evidence to show that the decedent came to his death in the manner alleged in the declaration, a verdict should be directed for the defendant. [1]

2. The general rule imposing upon a railroad company the duty of furnishing its employés a safe place in which to work is subject to the qualifications that, when a new road is being built, the employé cannot complain of its imperfect condition, but must take the risks naturally incident to such employment, and that he assumes greater risks upon such a road than upon a completed one, where he might expect that the track was clear and all obstructions removed.

3. Where a danger incident to a given employment is apparent, the employé assumes the risk.

Error to Kent. (Adsit, J.) Argued January 22, 1895. Decided May 21, 1895.

Negligence case. Defendant brings error. Reversed, and no new trial awarded. The facts are stated in the opinions.

[1] For the presumption as to due care of person found killed by alleged negligence of another, see note to *Hendrickson v. Railroad Co.*, 16 L. R. A. 261.

*Smiley, Smith & Stevens,* for appellant.

*Maher & Salsbury,* for plaintiff.

LONG, J. The declaration in this case alleges as grounds of negligence that the defendant did "wrongfully and negligently permit a certain tree to stand and remain by the side of and in close proximity to the said railroad, so that persons in the employ of said defendant, who were required to render labor and service of and pertaining to their employment in managing and making use of certain appliances, to wit, brakes, on certain of said cars, could not do and perform such labor and service without being exposed and subjected to danger of personal injury and of being killed by colliding with said tree." The declaration further sets forth that the plaintiff's intestate, while in the discharge of his duties as a brakeman on a certain train of cars, which was being moved, collided with said tree, was thrown off the car and under the wheels thereof, and was killed.

The facts, as shown upon the trial, were substantially that the deceased was 24 years old, and employed at the time of his death as a brakeman on a gravel or dirt train engaged in construction work on a short branch of defendant's road running to Turtle Lake, which branch was then in process of building. The train consisted of the engine, a number of flat cars, and a caboose. The flat cars had been loaded by a steam shovel with dirt while the train stood on a grade, and the train was backing down the grade, in order to get a start to go over the hill to a point where the dirt was to be dumped for grading purposes. As the train started to back down the grade, the deceased was seen to step from the caboose to the "plow car,"—the flat car next to it. He was next found, a moment later, on the track, dead, a portion of the train having passed over him. No one saw him fall from the cars, and no one knows how he was made to fall, or what he was doing when he fell. The deceased commenced work on this particular train the morning

he was killed. He had worked for defendant elsewhere, and was experienced in construction work. The track was laid there only temporarily, to haul out dirt in constructing the road. When the dirt had been removed, the track was to be laid over further. It was through the woods, and trees stood all along the track on both sides, and could easily be seen. When the train reached the steam shovel to be loaded, on that morning, the brakes were set, in order to hold the train in position on the grade. The engineer would hold the train in position while the brakes were being set, and, if it did not stand with the brakes alone, the engineer would keep his air on. There were two brakemen, the deceased and one Knudson. Knudson testifies that he set some of the brakes that morning. Mr. Lisk, the conductor, testified that the last he saw of the deceased he was coming out of the way-car door, and he said to him:

"Ben, we always leave the brakes set until we get down to the curve, and let them run around the curve so to get swing to go up over the hill."

The witness says:

"I told him that so he would know what to do, and he was at that time just stepping over from the platform onto the plow car. I stepped to the rear platform. The train went down the hill not faster than four or five miles an hour. The first I knew Smith was killed was when one of the cable men came running through the way car and said so."

Knudson testified that he last saw the deceased on the front platform of the way car; that the train was then loaded. The tree in question stood close to the track,— Knudson says, 3 or 4 feet from it; some of the witnesses put it 3½ feet from the track; and Lisk, the conductor, says it stood 16 or 18 inches from the side of the car. The brakes were on the sides of the cars; and Lisk says some of them were bent, so that they would hit trees as the train came up. The particular tree which it is claimed deceased struck against in handling his brake

stood some 10 or 12 car lengths away from the steam shovel, but in plain view from the way car if one looked in that direction. Smith was found lying across the south rail, cut in two. His cap lay at the foot of the tree on the side nearest the steam shovel. The body was lying head out from the track, and about 16 feet beyond the tree. His face was bruised on the left side. No one saw him after the train began to move. The last seen of him was by Knudson and Lisk. The plaintiff's contention is that the fact of the cap's being found near this tree, and the body beyond it, with a bruise on the left side of the face, is evidence that the deceased was struck by this tree, and thrown off the train; or at least that the jury might reasonably infer that he was struck by the tree from the facts proven.

We think the cause of the fall from the train was purely conjectural. The deceased was told by Lisk that the brakes were not to be opened until the train reached the bottom of the hill. So far as this record discloses, there was no occasion to go to the brakes until then; and yet the deceased fell from the train, or was thrown off, within a few rods from the place of its starting. The train was of flat cars, loaded with gravel, two or three feet high along the center. Whether he slipped on the gravel, fell in stepping from one car to another, or how or by what means he fell or was thrown off, is not shown. His face was as likely to be bruised by the fall as by striking against the tree. The only fact that possibly warrants the theory that he was struck by the tree is that his cap was at the foot of it, and his face bruised; and yet the theory of the plaintiff is that, notwithstanding he was told that the brakes were not to be opened until the foot of the hill was reached, he, without any cause, stepped to the brake, swung himself out, and was struck. If the jury could draw this conclusion from the facts proved, they could as well draw the conclusion that the deceased, in walking over the sand on the car, slipped and fell, or in passing from one car to the next

he fell between them. There was an utter lack of evidence in the case to show that the deceased came to his death in the manner set out in the declaration.

The case is similar in principle to *Tyndale v. Railroad Co.*, 156 Mass. 503, which was an action for the negligent killing of an employe. There was an entire absence of evidence as to what deceased was doing at the time of the accident, and it was held that it was not enough to show that one conjecture in regard thereto was more probable than another, as there must be some evidence to show that he was in the exercise of due care in order to justify recovery.

In *Chandler v. Railroad Co.*, 159 Mass. 589, the facts shown were that a freight train broke in two, and a brakeman on a caboose car at the end of the train left it on the order of the conductor to see what was the matter, and, after the train stopped, was found dead by the side of the track, his body torn, apparently by the brake connection. The court, after reviewing the facts, said:

"How the intestate came to his death is purely a matter of conjecture. There is no evidence that the ladder down which he went was defective. Whether he fell from the ladder by reason of negligence on his part, or whether, without looking to see whether the coal car was in its place, he attempted to jump upon it, is uncertain. There is an entire absence of evidence as to how the intestate happened to fall to the ground, and it is not enough to show that one conjecture is more probable than another."

See, also, *Donald v. Railway Co.* (Iowa), 61 N. W. Rep. 971.

But the case need not be rested upon this question alone. The road ran through a piece of woods. It was in process of construction and not yet finished. The deceased was 24 years of age, and accustomed to work at that kind of work. The trees were along the track on either side, and in plain view. The tree in question was plainly visible. The deceased, when he entered the employment of the defendant, knew that he was to work

upon a construction train, and could see at a glance that the road was not finished, and that trees bordered it on either side. As a general rule, it is the duty of a railway company to furnish its employés a safe place to work while operating its trains; yet the rule must be considered with some qualifications when a new road is being built. The employé cannot complain of the imperfect condition of a road he is employed to assist in making perfect. He must take the risks naturally incident to such employment. He assumes greater risks upon such a road than upon a completed one, where he might expect that the track was clear and all obstructions removed. As was said in *Carlson v. Railway Co.*, 21 Or. 450, 452:

"Where a servant is employed to put a thing in safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in safe condition and good repair for the purpose of such employment."

See, also, *Walling v. Construction Co.*, 41 S. C. 388; *Railway Co. v. O'Brien*, 16 Colo. 219; *Railroad Co. v. Henderson*, 134 Ind. 636; *Railway Co. v. Naylon*, 17 Colo. 501; McKin. Fel. Serv. p. 82.

The defendant asked the court to charge the jury that—

"The duty of the deceased to be vigilant and on the alert for danger was greater in this case than would have been the case if the road had been completed, and not in process of construction."

This was refused, and in the charge no reference was made to the unfinished condition of the road. This was error.

But a more serious question arises in the case. It appears that at a glance the deceased would be familiar with the surroundings. He could plainly see the trees bordering the track, and the tree in question was in plain view. If he had looked, he must have seen it before the car reached it. In *Pennington v. Railway Co.*, 90 Mich.

505, a switchman was fatally injured by coming in contact with a post in a train shed, while descending a car ladder in the performance of his duty. The distance between the ladder and the post was only 11 inches. Judgment for defendant in the court below was affirmed.

In *Illick v. Railroad Co.*, 67 Mich. 632, it appeared that the deceased was a brakeman on a freight train, and was killed by coming in contact with a railroad bridge, while climbing up a ladder on the side of the car, as the bridge was close to the track. Verdict was directed for defendant in the court below, and affirmed. It was said by this Court:

"The danger in going up the ladder at that place was before him, and was as plain to his observation as to any person connected with the train, or whose duty it was to run upon the road. It was not his duty, on the signal for brakes, to go up the ladder when the service was fraught with such danger. There was no special request from any person in charge of or controlling the train for him to make the perilous ascent, and when he did so it was at his own peril. The duties of his employment did not require him to go upon the box-car until he had passed the bridge. It did, however, require him to observe and take knowledge of the danger, if any, in crossing the bridge, if such knowledge could be obtained by his own observation.    *    *    *    It is well settled that the employed assumes all the risks and perils usually incident to the employment, and that included in such risks and perils are those which it is a part of the duty of the employed to take knowledge of by observation."

In *Melzer v. Car Co.*, 76 Mich. 94, it is held that, if a danger incident to a given employment is apparent, the employé assumes the risk; and the same rule was held in *Balle v. Leather Co.*, 73 Mich. 158; *Powers v. Lumber Co.*, 92 Id. 533; *Michigan Central R. R. Co. v. Austin*, 40 Id. 247; *Fisher v. Railway Co.*, 77 Id. 546; *Kean v. Rolling Mills*, 66 Id. 277; *Batterson v. Railway Co.*, 53 Id. 125. We think that, in this view of the case, the court should also have directed verdict in favor of the defendant.

Judgment reversed. No new trial will be awarded.

GRANT and HOOKER, JJ., concurred with LONG, J.

MONTGOMERY, J. (*dissenting*). Deceased, while in the employ of the defendant railway company as a brakeman, was instantly killed. The train upon which he was employed was a gravel or dirt train, engaged in construction work on the branch of defendant's road running to Turtle Lake, which was at that time in process of construction. The track where he was killed had been in use some two months, and the work in which the employés of defendant were engaged with the train upon which the deceased was at work was carrying gravel to be placed on the track beyond the point where the injuries were received. The train consisted of an engine, a number of flat cars, and a way car or caboose. The train had been pushed up a grade to a steam shovel. The flat cars had been loaded by the steam shovel, and the train then started, and went down the grade, in order to get a start to go over a rise in ground beyond the point where the steam shovel was located, up to the point where the dirt was to be dumped. At about the time of starting to go down the grade, the conductor told the deceased that the brakes were to be left on until they reached the bottom of the grade. The brakes of the flat cars were adjusted to the ends of blocks bolted to the sides of the cars two or three feet from the ends, so that the brake staffs were three or four inches from the sides. To adjust a brake, the brakeman grasped a wheel at the top of the brake staff, and turned the wheel, thus winding a chain around the staff, and drawing the shoe close to the car wheel. The brake wheels were of different sizes.

The testimony shows that about 16 to 18 inches from the track a tree was left standing, and that some of the brake wheels passed about 4 inches from the tree. The decedent was found about 16 feet from the tree in question, from which it is claimed he received his injuries; and his cap was found at the foot of the tree, and the

side of his face was bruised. There was testimony tending to show that stopping and starting the train would sometimes loosen the brakes; that it was the brakeman's duty to look after the brakes going down the grade, and see if they were tight enough, and sometimes to loosen them, if too tight, to prevent the grinding of flat places on the car wheels. To set a brake in the usual way, a brakeman would swing his body with the turning of the wheel, and the movement would carry him out from over the car. The decedent first commenced work upon this branch of the road on the morning in question, and had only passed the tree in question once, and then was riding in the way car. There was no direct testimony as to the manner in which the injury occurred, but it is the theory of plaintiff that while in the performance of his duties as brakeman the decedent was struck by the tree in question. On the part of the defendant it is claimed that the manner of his death is purely conjectural, and that there is no proof which would justify a jury in finding that the injuries occurred in the manner alleged in plaintiff's declaration.

I am not able to agree with this contention. Such a rule, applied to a state of facts like this, would amount to a denial of right in many cases, where the fact can only be established by inferences from other facts proven in the case. It is true, it is possible that the decedent may have lost his footing, and fallen off the gravel cars; but, if there was testimony tending to show that, when in the line of his duty, he would probably be in a position which would result in his coming in contact with the tree in question, it is no more guesswork for the jury to determine that such was the fact in the case, in view of the place where his body was found, and in view of the fact that his cap was found at the foot of the tree, than would be the fact in any case depending upon circumstantial evidence. The presumption is that he was not himself negligent, and the fact that his duty required him to look after the brake is also a circumstance which

the jury had the right to take into account in determining the fact. I think there was sufficient evidence to justify the submission of the question to the jury upon this branch of the case. See *Adams v. Iron Cliffs Co.*, 78 Mich. 277; *Morton v. Railroad Co.*, 81 Id. 427.

I think there was also evidence from which the jury might have found that the defendant was negligent in laying its track, over which its employés were compelled to travel in the performance of their duties, so near to the tree in question that an employé, while in the performance of his duty, might come in contact with the tree and receive injuries. The rule is well settled that it is the duty of the master to provide his servants with a reasonably safe place to work. See *Van Dusen v. Letellier*, 78 Mich. 492; *Morton v. Railroad Co.*, 81 Id. 431. It is contended that the deceased was not in the performance of his duty, even if it should be found that he was at the brake at the time he received the injuries complained of. It is true, the conductor testified that he said to the deceased, "We always leave the brakes set until we get down to the curve." But we do not think this statement should be construed as a prohibition against the deceased going to the brake, or to his setting the brake in case it became loosened, or loosening the brake in case of apparent injury to the car wheels.

Nor do I think that the fact that the road was in process of construction is necessarily conclusive of plaintiff's rights. The construction had so far proceeded that the construction trains were run over the place in question, and the accident, according to the theory of the plaintiff, did not result from defects in the roadbed, but because of the improper placing of the roadbed in a place contiguous to the obstruction in question. The case is, on this branch, on all fours with *Stackman v. Railway Co.*, 80 Wis. 428. See, also, *Sweet v. Railroad Co.*, 87 Mich. 559.

Nor do I think that the facts in the case are such as to bring it within the rule that the servant should be

held to assume risks which are apparent upon entering or continuing in the employ of the master. There is no direct evidence that the deceased ever saw the tree in question; and, while it is stated in the brief of counsel that there were other trees near to the track, it certainly does not appear conclusively that there were any others on that portion of the road over which decedent had passed, which were near enough to the track to come in contact with any of the employés while in the performance of their duty. The presumption would certainly be the other way, and that the employé would have the right to presume the contrary to be the fact.

As my brethren are of the opinion that no case was made by the plaintiff, it becomes unnecessary for me to consider the special questions raised, or to determine whether there was error committed in the course of the trial.

McGRATH, C. J., did not sit.