Baltimore and Ohio Southwestern Railway Company *v.* Welsh.

---

BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY *v.* WELSH.

[No. 1,918.    Filed May 18, 1897.]

MASTER AND SERVANT.—*Injury to Brakeman on Construction Train.*— *Assumption of Risk.*—A brakeman on a construction train engaged in the construction of a road and making same safe for travel, knowing the road was incompleted and that no trains other than the construction train had passed over it, by the acceptance of such employment assumed all risks incident to the service, and cannot recover for an injury received while in such service by reason of a defect in such road.

From the Lawrence Circuit Court.    *Reversed.*

*W. R. Gardiner, C. G. Gardiner, W. R. Gardiner, Jr.* and *R. N. Palmer,* for appellant.

*Dunn & Lowe, Matson & Giles* and *W. H. Edwards,* for appellee.

HENLEY, J.—This was an action by Michael Welsh against the Baltimore and Ohio Southwestern Railway Company, the appellant, for injuring appellee, who was an employe of the said company. The complaint is in two paragraphs. The first paragraph alleges that appellee was employed as a brakeman on a work, or construction train belonging to appellant, that there was a branch line of appellant's road about ten miles in length leaving the main line near River-

dale in Lawrence county, and extending to the city of Bedford in said county, and that said work, or construction train was frequently run over and along said branch railway in conveying stone and freight, and in transacting such other business as a work, or construction train usually did. That there was on said branch railway between the stations of Riverdale and Bedford a wooden trestle about 200 feet in length and from 20 to 75 feet in height; that said trestle was erected on a curve of about 8 degrees, and was a part of the track of said branch railway; that said trestle was improperly constructed and was unsafe for trains to pass over; that said trestle was negligently suffered to become out of repair and to be in an unsafe condition for trains to pass over the same, and the appellant had full knowledge of such defects prior to the time at which appellee received his injuries, and that appellee did not know of such defects; that on the 4th day of October, 1893, said work, or construction train upon which appellee was a brakeman, while returning from Bedford to Riverdale, was, by reason of the careless and negligent manner in which said trestle was constructed and by reason of appellant negligently suffering said trestle to give down and thereby causing the track to be lower than the track to the approaches of said trestle, and by reason of the insufficient elevation of the outside rail of the track on said trestle, and by reason of the careless manner in which the train was at the time being run and operated, the said train left the track and appellee received the injury for which damages are demanded, and which he alleges were received without any fault or negligence upon his part.

The second paragraph of complaint contains substantially the same averments as the first.

A demurrer to each paragraph of the complaint was

overruled and the ruling excepted to. An answer consisting of a general denial and one special paragraph was then filed. To the special paragraph a demurrer was filed and overruled. This special paragraph of answer is substantially as follows: That appellee at the time of the injury complained of and for a long time prior thereto was in appellant's employ as a brakeman upon a work or construction train; that the branch road upon which the injury occurred was at the time of such injury and accident in course of construction and was being surfaced and ballasted and was unfinished; that the construction train upon which appellee was a brakeman was being run over and along said road for the purpose of hauling ties, iron, stone and ballast to complete said railroad, its track, trestles, bridges and fills, and especially the trestle, fills and approaches where the appellee received the injury complained of. That said construction train had been engaged in hauling material for the construction of said road for a long time prior to the accident complained of by appellee, during all of which time appellee was upon said train as a brakeman; that said road was not open for business or traffic for either freight or passengers at the time appellee received his injury, and no regular train had been run over said road prior to said time because the same was unfinished as appellee well knew. That appellee was a brakeman upon the construction train during all the time said road was being built, and knew the condition of the bridges, trestles, track, etc., etc., and knew that the road was unfinished and that at the time of the injury complained of the road was being surfaced up, and the track and approaches where the accident occurred were being completed and put in line. By reason of which facts appellant says appellee is estopped to prosecute this action. To

this answer appellee filed a general denial.   Upon the issues thus formed a trial by jury was had, resulting in a general verdict for appellee in the sum of twenty-five hundred dollars.   In addition to the general verdict so returned, the jury found specially upon questions of fact by way of answers to interrogatories, submitted at the request of the parties to this action.

Appellant moved for judgment upon the special findings and answers to the interrogatories, notwithstanding the general verdict, which motion was overruled and appellant excepted.

Appellant moved for a new trial, which motion was overruled and judgment was rendered in favor of appellee for $2,500.00.

The first three specifications of the assignment of errors question the sufficiency of the complaint, the fourth the correctness of the ruling of the lower court upon the motion for judgment upon the special findings, notwithstanding the general verdict, and the fifth, the ruling upon appellant's motion for a new trial.   No cross errors are assigned.

We believe both paragraphs of the complaint state a cause of action, and in view of the conclusion we have arrived at as to the final disposition of this cause, it is unnecessary to further discuss it.

Appellant next complains of the action of the court in overruling its motion for judgment upon the special findings.   The jury found specially in answer to interrogatories returned with the general verdict the following facts: "That the accident in which appellee was injured occurred on that part of appellant's road which was being constructed in the summer of 1893; that the road was being surfaced up and the low places and sags were being taken out at the time the accident occurred; that appellee was a brakeman on the construction train of appellant and passed over the

place where the accident occurred on the day of the accident three times before the happening of the accident by which he was injured; that said construction train on said day was composed only of the engine, tender and caboose.   That appellee was standing in the door of the caboose looking out upon the railroad track in the direction in which the train was moving at the time of the accident; that there was a low place or sag in the track at the place where the accident occurred; that any person being in the caboose of the construction train or on the engine thereof could feel the low place in the track at the point where the accident occurred by the motion of the engine or caboose in passing over the same; that such low place or sag in the track had existed several days prior to the time of the injury; that said railroad was completed on October 20, 1893; that the construction train upon which plaintiff, while acting as brakeman, was injured, had been passing over the point where the accident occurred for several weeks prior to that time and had been, and was, engaged in hauling ballast and material for the completion of the railroad; that appellant's roadmaster and supervisor, whose duty it was to inspect appellant's road, had not passed over the same and pronounced the same safe for the passage of the construction train over the same at the speed of ten or twelve miles an hour; that at the time of the accident the train was running at a speed of eight or ten miles per hour; that on the day the accident occurred there were between fifty and sixty men at work upon this track, ballasting and surfacing up, and taking the sags out of the same, and said force had been so engaged for several days prior to such accident; that the accident occurred in the day time and appellee had on the very day of the accident, in the day time, passed over this point three times prior to the accident.   That

appellee was employed continuously upon the con-
struction train as a brakeman from the time the first
rails were laid upon the railroad near the point where
the accident occurred, up to the time he was injured;
*that said road where said accident occurred was at
the time of said accident being surfaced and was new
and incomplete; that the construction train upon which
appellee was brakeman hauled the iron, ties, ballast
and bridge timbers to construct the railroad upon
which the appellee was injured, and the appellee knew
that the railroad was new and incomplete and was
being surfaced up and the low places and sags
were being taken out at the time of the accident.*
That on the 3d day of October, 1893, appellant had
hauled freight over said road; that at the time of ap-
pellee's entering appellant's service he was employed
on a construction train running between the cities of
Washington and Seymour, and the building of the
branch road where the accident occurred was begun
after appellee's employment and appellee was ordered
from the main line to the new road; that appellant's
roadmaster knew of the defect in the track where the
accident occurred for four days prior to the time of
the accident and that appellee had no knowledge of
such defect."

Are the facts so found in irreconcilable conflict
with the general verdict? Two elementary principles
of law governing the relation of master and servant
have been stated and applied in a very large number
of cases by the Supreme Court of this State; the first,
that the master will use reasonable diligence to fur-
nish the servant a safe place in which to work and
safe machinery and appliances, and that the servant
shall not be exposed to greater dangers than those
which may reasonably be expected from the nature of
the work in which he engages; that if there are latent

dangers, or dangers which the master may reasonably suppose would escape the notice of the servant, and they are known to the master, it is the duty of the master to inform the servant of such dangers.   It invariably follows, then, that where a servant enters upon a hazardous employment he necessarily assumes the risks and perils incident thereto.  Thus he is held to assume all risks which naturally arise from the conduct of the business and those risks which the exercise of his opportunities of inspection while giving diligent attention to such services would have disclosed to him.   *Evansville, etc., R. R. Co.* v. *Henderson*, 134 Ind. 636;   *Atlas Engine Works* v. *Randall*, 100 Ind. 293;   *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151;   *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18;   *Ames, Admr.*, v. *Lake Shore R. W. Co.*, 135 Ind. 363;   *Lynch* v. *Chicago, etc., R. R. Co.*, 8 Ind. App. 516;   *Brazil Block Coal Co.* v. *Hoodlet*, 129 Ind. 327;   *Rogers* v. *Leyden*, 127 Ind. 50;   *W. C. DePauw Co.* v. *Stubblefield*, 132 Ind. 182.

And where the danger is equally open to the observation of master and servant it is assumed by the servant as an incident of the service, and it does not matter how hazardous be the nature of the service, all risks from the perils ordinarily incident to it, are assumed by the person who voluntarily enters it.   The servant is bound to use his eyes to see what is open and apparent to a person using his eyes, and if he fails to do so he cannot hold his employer with the consequences of his failure to see.  The jury in this cause having found that the appellee was a brakeman upon the construction train which hauled the material with which to build the road where the accident occurred; that at the time of the accident the road was new and incomplete and was being surfaced up, and the low places and sags being taken out, and that appellee

knew of these facts, the question then arises, had not appellee assumed the risk which resulted in his injury as an incident of his employment? The general rule of liability of a railroad company for negligence is not the same in the case of an employe as in the case of a passenger. In the case of an employe no presumption of negligence on the part of the company arises from the accident, and the negligence must be clearly shown in order to warrant a recovery. A different rule also applies to the employes of a railroad company engaged in operating the line, and those engaged in the work of constructing or repairing the line. The risks assumed are entirely different; in the one instance the employe has a right to presume that the place where he is sent is in a reasonably safe condition; in the other, the servant knows that he is sent to make safe the very place where he is working. The Pennsylvania courts hold that laborers on a railroad who are engaged in repairing the track take all the risks incident to the track being out of repair and its dilapidated condition. *Philadelphia, etc., R. R. Co.* v. *Schertle,* 97 Pa. St. 450.

"The rule that a master is bound to use reasonable care and skill to furnish his servants safe and suitable instruments and appliances to perform the services in which they are engaged, only applies where such instrumentalities are placed in their hands for use. It has no application to the safety and condition of the thing which the servant is employed to repair. Where a servant is employed to put a thing in a safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in safe condition and good repair for the purpose of such employment." Section 3032, Bailey's Per. Inj. Relat. to Master and Servant, vol. 2.

In the case of *Brick* v. *Rochester, etc., R. R. Co.,* 98 N.

Y. 211, a laborer was engaged with others in repair-
ing the track and was injured by the construction
train upon which he was riding leaving the track. It
was said that while the rule is generally applied, that
where it is the duty of the employe of a railroad cor-
poration in the course of his work to ride over the
road, it is its duty to provide a track suitable and suffi-
cient for the purpose, and to maintain it in good order;
but the rule is qualified where the road has become
dilapidated and out of repair, and is in the process of
construction, in which work the servant is employed.
And in that case it was held that the risk was one in-
cident to the nature of the employment.

And it was held in the case of *Walling* v. *Congaree
Construction Co.*, 41 S. C. 388, 19 S. E. 723, that an em-
ploye upon a construction train assumes the risk of in-
jury from the defective condition of the road. To the
same effect, see *Lindvall* v. *Woods*, 41 Minn. 212, 42 N.
W. 1020, 4 L. R. A. 793.

In the case of *Walling* v. *Congaree Construction Co.*,
*supra*, where a conductor in charge of a construction
train used in constructing a new railroad was killed
by the giving way of a portion of the roadbed, it was
held that a distinction was recognized between a com-
pleted road and one in process of construction, and
that he assumed the risk incident to its construction.

In *Manning* v. *Chicago, etc., R. R. Co.*, 105 Mich. 260,
63 N.W. 312, the court said, in substance, that a brake-
man who is employed to work on a construction train,
can observe that the road is unfinished and incomplete
and assumes the risks incident to such unfinished and
incomplete condition of the road. That as a general
rule it is the duty of a railroad company to furnish
its employes a safe place to work while operating its

trains; yet the rule is qualified when a new road is being built. The employe cannot complain of the imperfect condition of a road he is employed to assist in making perfect.

Nor does it matter whether the employe, engaged in the construction or repair, actually knew of the particular defect which caused the accident, if he did know of the general bad condition and incompleteness of the track. *Green* v. *Cross*, 79 Texas 130, 15 S. W. 220.

And knowing that the track was new and rough and uneven, and having passed over it a great many times, and three times in daylight, on the very day of the accident, appellee must be held to have had an opportunity to know its condition and is chargeable with its risks. *O'Neal* v. *Chicago, etc., R. W. Co.*, 132 Ind. 110.

In the case of *Colorado Midland R. W. Co.* v. *O'Brien*, 16 Colo. 219, 27 Pac. 701, it was said that a person engaged to do work in and about the construction of a railroad assumes the risk of such employment, including the risk of being transported to and from his work in a construction train over a newly constructed road, and cannot expect the road and roadbed to be in a perfect and safe condition before it is finished.

The reasoning of all the cases upon this subject is very similar to that of the recently decided case of *Kanz* v. *Page* (Mass.), 46 N. E. 620, which was an action for personal injuries caused by the fall of a piece of iron from the ceiling of a room in defendant's factory.

We quote from the opinion: "The facts were that a fly wheel had exploded in the engine room, and the plaintiff was sent into the room to clear out the rubbish. We assume that this order was given by the defendants' superintendent, and that the defendants knew that the plaintiff was there. The defendants

Baltimore and Ohio Southwestern Railway Company *v.* Welsh.

also knew the shattered condition of the room, which was obvious, but did not know that there was any iron likely to fall from the ceiling. While the plaintiff was at work, the iron fell upon him. The plaintiff's position is that it was the defendants' duty to examine the place more fully than he had done before sending him in there, and that the plaintiff had a right to rely to some extent upon their or the superintendent's having done so before sending him to work.

"We are of the opinion that the principle referred to does not apply to the case. Obviously, there are limits to the duty of employers to provide for the safety of their workmen,—limits set by what is practicable in a commercial sense, and limits set by what is naturally to be expected under the circumstances. The chief sphere of the duty is in the permanent or recurring conditions of the machinery or place where the workman is employed, so far as it is under the employer's control, where the danger is not obvious or necessarily incident to the business. * * * When a workman is sent into such a room on the day of the explosion to clear away the ruins, it is manifest that he is taking one of the steps which are necessary to disclose just what has happened. It is not a natural inference on the part of one so sent that the place has been inspected, and it is not a natural interpretation of the order to take it as implying that the superior knows that it is safe. Such an inference and interpretation are not based on the experience of life. They are mere deductions from the letter of an inaccurately stated rule of duty, assumed beforehand to cover the case. Some one must be first in the place of possible danger. The workman sent in to clean it up has no right to assume that he is not the first, nor is the employer bound in formal language to notify him that no one as yet has made certain that nothing will give way."

The cases do not proceed upon the theory that the master would be excused because of the fault of the servant, but generally upon the ground that the injury received grew out of risks assumed by the servant as incident to the employment; but it was held in the case of *McDermott* v. *Pacific Railroad Co.*, 30 Mo. 115, that a brakeman could not recover against the company on account of injuries received from the train going through a defective bridge, there being no allegation that the company employed incompetent servants or agents, or that it failed to exercise ordinary care in their selection, and it was held that the faulty construction and condition of the bridge was the act of fellow-servants of the brakeman. It is possible that the rule is extended too far in the last mentioned case and we do not cite it with approval.

The courts of this State have adopted the rule, when applied to an experienced adult employe, that a servant who accepts work on a construction train, by the mere act of acceptance is warned that said road is in process of construction and hence is incomplete. *Evansville, etc., R. R. Co.* v. *Maddux*, 134 Ind. 571.

In a case very similar to this the Supreme Court of this State speaking by Coffey, C. J., said: "In this case, however, the unfinished condition of the appellant's road was open to every one. Its condition was open to the observation of the appellee. It is not a case of latent dangers or dangers that might escape the observation of the appellee, but it is a case where everything was open alike to the master and the servant. The appellee stands in the condition of complaining of the imperfect condition of a railroad which he was employed to assist in making perfect. Had the road been completed the necessity for his employment would not have existed." *Evansville, etc., R. R. Co.* v. *Henderson*, 134 Ind. 636.

The special findings of the jury show beyond controversy that appellee had an equal, if not a much better opportunity, of knowing the condition of the track and road than did appellant, and that the danger was at least equally known and open to both master and servant. That the servant by the most casual observation during the prosecution of the work could have known of the defect in the track which caused the accident.

In the case of the *Bedford Belt R.W. Co.* v. *Brown*, 142 Ind. 659, the Supreme Court, by Hackney, J., says: "It is the general rule that it is a duty of the master to supply safe places and appliances for the service of his employes, but it is not understood that this duty requires the master to make a powder-house a place of safety, or to make railroading as free from danger as hoeing corn, or to make the labor of bridge building, at fifty-three feet above the ground, as free from hazard as the service of an office clerk."

And in the case of *Evansville, etc., R. W. Co.* v. *Henderson*, 142 Ind. 596, the Supreme Court held that a servant who accepted employment to work on a construction train to run on a road not yet open for business, the track of which was incomplete, not ballasted, and imperfect, such defects were equally open and apparent to the employe and employer, and that the employe assumed all the risks incident to the employment.

It may be assumed, we think, that appellee in performing the services in which he was engaged understood that he was not working upon a road which was finished and in good repair, but upon one which was unfinished and incomplete and over which no train other than the one upon which he was employed had ever passed, and as one of the servants engaged in making safe the common working place he was sub-

jected to greater risks and perils than would be incurred in the ordinary work on a completed road. In accepting service as a brakeman upon a construction train appellee assumed all the risks incident to such service. The sag in the track where the accident occurred and the generally unfinished and incomplete condition of the road were matters which came more directly within the observation of appellee than of appellant. He could not say he had not an equal opportunity with appellant to know of the dangers of his work.

Counsel for appellee contend that the evidence is not in the record because under numerous decisions of this court and the Supreme Court the record does not affirmatively show that the original longhand manuscript of the reporter's shorthand notes of the evidence was filed in the clerk's office prior to its incorporation in the bill of exceptions. Counsel state the rule correctly, but it is not applicable to this cause for the reason that the record nowhere discloses the fact that an official reporter was appointed and sworn to take the evidence, nor that it is the original longhand manuscript of the evidence which is incorporated in the bill of exceptions, but the whole record appears to be a transcript made by the clerk.

In view of the decision reached, it is not necessary to discuss any other alleged error brought to the notice of this court by appellant.

The special findings of the jury cannot be reconciled with the general verdict. Under the special findings appellant was entitled to a judgment in its favor. The cause is reversed with instructions to sustain appellant's motion for judgment upon the special findings and answers to the interrogatories, and render judgment thereon in favor of appellant.