PHELPS *v.* CHICAGO & WEST MICHIGAN RAILWAY CO.

RAILROADS — INJURY TO EMPLOYÉ — STRUCTURE NEAR TRACK — ASSUMED RISK.

> A brakeman who, while riding on the side ladder of a freight car, upon the main track, was injured by coming in contact with a fish-chute erected beside the track, at a point near a station, but outside of the yard where trains were made up, is not precluded from a recovery, as a matter of law, on the ground that he assumed the risk of such injury, where, although the chute was in plain view, he was unacquainted with the surroundings; though the rule would be otherwise had the accident occurred by reason of such a structure abutting upon a side track.

| | |
|---|---|
| 122 | 171 |
| f122 | 236 |
| f122 | 239 |
| 122 | 171 |
| s81NW | 101 |
| s84NW | 66 |
| 122 | 171 |
| s81NW | 101 |
| s84NW | 66 |
| 132 | 540 |
| 133 | 569 |
| 122 | 171 |
| 145 | 514 |
| 122 | 171 |
| 154 | 432 |

Error to Grand Traverse; Corbett, J.    Submitted January 3, 1899; opinions filed December 12, 1899.    Rehearing granted September 24, 1900; former decision reversed November 13, 1900.

Case by George W. Phelps against the Chicago & West Michigan Railway Company for personal injuries.    From a judgment for plaintiff, defendant brings error.    Affirmed.

*Smith, Nims, Hoyt & Erwin*, for appellant.

*Dodge & Covell*, for appellee.

LONG, J.    Plaintiff was a brakeman in the employ of the defendant company.    For two years prior to the accident complained of, he had been employed by the defendant as a yard-master in its yards at Traverse City;    but on Friday preceding April 27, 1896, he had been transferred from that work to brake on a freight train running from Traverse City to Petoskey and Bay View.    At Petoskey the defendant's road is located near to, and conforms to, the bay.    On the northerly side of the track, and about 40 feet from it, was located a fish-house, for the storage and

packing of fish.  Leading from the platform of the fish-house to the railroad side track was an inclined platform or chute, about 4 feet in width, constructed of planks, and about the height of the floor of a car, over which fish-cars were run between the fish-house and the defendant's cars. This chute extended up to within 12 or 13 inches of the side of the freight cars standing on the side track.  On April 27, 1896, the plaintiff made a trip to Petoskey as a brakeman.    When the train reached Petoskey, two box cars were standing on the side track northerly from this fish-chute.  These cars were to be moved upon the main track.  For that purpose the engine was run north to the switch opening into the side track; and, after the switch was thrown by the plaintiff, he coupled the engine to the cars, then got upon the first car, walked on the top of it, and got down onto a ladder attached to the side of the other car, next to the fish-chute.  The plaintiff stood on the lower step of the ladder, held onto it with his left hand, and with the other took hold of a lever at the end or corner of the car for the purpose of uncoupling the cars; his intent being to cut off the car upon which he was standing before it got onto the main track.  After the cars were under motion, he attempted to uncouple, and while in this act his body came in contact with the fish-chute, and he was forced between it and the car, and seriously injured.

Plaintiff testified that this was the first time he had ever done any work in that yard; that he did not see the fish-chute, and had no knowledge it was there.  The court charged the jury that it was the duty of the railway company to provide a reasonably safe place for its employés in the performance of the duties in which they were employed; and if the jury found from the evidence that the fish-chute was built so near the main track of defendant's road that there was not sufficient room for persons to pass between it and an ordinary box car moving upon the track, and the plaintiff, without fault on his part, was unconscious of the conditions there, and was injured as claimed,

he would be entitled to recover.   The jury returned a verdict in favor of the plaintiff for $500.   Defendant appeals.

Defendant contends that the plaintiff must have known from his experience that all railroads have platforms where they handle freight at freight houses; that this fish company was shipping a large amount of fish over this road; that in going from the depot, either in riding upon the pilot or the gangway of the engine, to the switch, plaintiff was facing this fish-chute, and must have seen the situation there in passing it; that, had he looked at the fish-house, he must necessarily have seen the chute; that he was guilty of contributory negligence in not having seen it in passing by, as it was broad daylight at the time of passing; that it was his duty to be watchful for his personal safety; and that, in the absence of knowledge of his surroundings, there was an increased duty to use his senses, and not proceed blindly with his work.   Defendant asked the court to charge the jury:

"Even though the plaintiff did not actually know of the presence of said fish-chute, if the same was in plain view, and the danger in attempting to pass by the same, riding on the side of the car, was apparent, and the plaintiff failed to see the fish-chute and to apprehend the danger, it was his own fault, arising from his inattention or failure to note his surroundings when he got on the ladder on the side of the car; and, if you find this condition to be true, then you are instructed, as a matter of law, that the plaintiff would not be entitled to recover."

This was refused.   The court charged the jury upon this subject that:

"It was the duty of the plaintiff to use reasonable care and caution in the performance of his labors as brakeman, and, to that end, he was required to make close and careful observations as to the main and side tracks, and note all objects of danger situated at or along the same; and if he failed to do so, and afterwards sustained an injury on account of not seeing or observing such obstruction or object, then you are instructed, as a matter of law, that said plaintiff cannot recover, and your verdict should be for the defendant."

Also, the court charged:

"The defendant's claim or theory is that the presence of the fish-chute was known to the plaintiff, and that he thoughtlessly took his position on the side of the car, and without looking was carried forward against said chute, and thereby injured, and that said injury would not have happened but for the inattention of said plaintiff. Now, you are instructed, as a matter of law, that if you find this theory of defendant to be true, your verdict should be in its favor."

The testimony clearly shows that, had plaintiff looked, he could have seen this fish-chute. It was not negligence for the defendant to place it there for the convenience of its business. It was no more a dangerous object than a platform of the same height would be, placed as near this side track, and was as plainly to be seen. The plaintiff, in engaging as a brakeman, assumed the risks incident to such employment; and we think this was one of the assumed risks. Elliott, in his work on Railroads (volume 3, § 1290), lays down the rule of assumed risks as follows:

"The employé assumes all the risks of the service in which he voluntarily engages, except such as arise from negligence on the part of the employer; so that, in whatever form the question may arise, the general rule must be that risks of the service shall not be increased or caused by the employer's negligence; but risks not increased or caused by the employer's negligence are risks of the service which the employé assumes. The test is not danger, but negligence on the part of the employer."

At section 1269 the same author, after speaking of the rules laid down by courts in the different States in reference to structures so near the tracks as to endanger the safety of employés while engaged in the performance of their duties, continues:

" It seems to us that where the employé has knowledge, or is chargeable with knowledge, of the existence and situation of such structures, he assumes the risk of dangers from them; for we can see no reason why the general rule

that an employé assumes the risk of the dangers of the service does not apply.  *  *  *  Some of the courts seem to require proof of actual knowledge in order to exculpate the employer, but we think this view erroneous; for, if the facts are such as make it negligence on the part of the employé not to know, there can be no recovery."

This was the rule laid down by this court in *Illick* v. *Railroad Co.*, 67 Mich. 632; *Pennington* v. *Railway Co.*, 90 Mich. 505; *Manning* v. *Railway Co.*, 105 Mich. 260; *Ragon* v. *Railway Co.*, 97 Mich. 265 (37 Am. St. Rep. 336).  This rule is fully sustained by the Massachusetts cases.  *Austin* v. *Railroad Co.*, 164 Mass. 282; *Lovejoy* v. *Railroad Co.*, 125 Mass. 79 (28 Am. Rep. 206); *Goodes* v. *Railroad Co.*, 162 Mass. 287; *Content* v. *Railroad Co.*, 165 Mass. 267; *Ryan* v. *Railroad Co.*, 169 Mass. 267; *Bell* v. *Railroad Co.*, 168 Mass. 443. This same rule is recognized by the courts of Iowa, Indiana, and New York.  *Brown* v. *Railway Co.*, 69 Iowa, 161; *Pennsylvania Co.* v. *Finney*, 145 Ind. 551; *Gibson* v. *Railway Co.*, 63 N. Y. 452 (20 Am. Rep. 552). It may be said that the rule here laid down is in conflict with *Sweet* v. *Railroad Co.*, 87 Mich. 559.  In that case I am of the opinion that the rule of assumed risk was overlooked, and that the case went off on the principle of the master's duty to furnish a safe place for his employés. At least, the case has not since been followed by this court, as reference to *Pennington* v. *Railway Co.*, 90 Mich. 505, *Manning* v. *Railway Co.*, 105 Mich. 260, and *Ragon* v. *Railway Co.*, 97 Mich. 265 (37 Am. St. Rep. 336), illustrates.

Under the circumstances shown by this record, the court should have directed the verdict in favor of defendant.

Judgment reversed, and a new trial ordered.

GRANT, C. J., and HOOKER, J., concurred with LONG, J.

MOORE, J. (*dissenting*).  I cannot agree with the opinion written by Justice LONG.  In addition to the

statement of facts contained in his opinion, it ought to be
said the fish-house is not near the freight depot or plat-
form. The fish-chute was built in two sections. The
section nearest the platform of the fish-house was remov-
able, so that a team could be driven between the platform
of the fish-house and the permanent portion of the chute.
There was a short toe door to reach from the solid portion
of the chute to the floor of the car which was to be loaded.
It is very clear, from the testimony, there was nothing in
the way of making the toe door longer, and the solid por-
tion of the chute shorter, so as to insure the safety of the
railway employés when they were discharging the duties
incident to their employment. If the safety of the men
had been given as much consideration as was given to the
convenience of those who wanted to reach the platform of
the fish-house with teams, the chute would have been
built upon different lines. The case is clearly within the
principles laid down in *Sweet* v. *Railroad Co.*, 87 Mich.
559. It is suggested that this case was not followed by
the later cases in this court, and that they justify the opin-
ion written by Justice LONG. I do not so read the cases.
In the case of *Pennington* v. *Railway Co.*, 90 Mich. 505,
it was held there was a fatal variance between the declara-
tion and the proofs. The opinion shows:

" The deceased was familiar with all the surroundings.
He knew that the train was in motion; that, if it did not
stop, he must strike this post, which was less than 20
feet distant. * * * There is no evidence nor claim
that the rules of the defendant required the deceased to
descend from the cars when in motion in this dangerous
place."

The case is easily distinguishable from the case of
*Benage* v. *Railway Co.*, 102 Mich. 72. In that case
deceased was riding in a confessedly unsafe place, in
violation of the rules of the company, and when a safe
place had been provided for him. The court said that, as
a matter of law, under such circumstances the deceased
was guilty of contributory negligence. Nor is the case of

*Manning* v. *Railway Co.*, 105 Mich. 260, controlling. It was claimed the deceased was killed by striking a tree near the track. It appears by the opinion that "there was an utter lack of evidence in the case to show that the deceased came to his death in the manner set out in the declaration." It also appeared that :

"The road ran through a piece of woods. It was in process of construction, and not yet finished. The deceased was 24 years of age, and accustomed to work at that kind of work. The trees were along the track on either side, and in plain view. The tree in question was plainly visible. The deceased, when he entered the employ of the defendant, knew that he was to work upon a construction train, and could see at a glance that the road was not finished, and that trees bordered it on either side. As a general rule, it is the duty of a railway company to furnish its employés a safe place to work while operating its trains; yet the rule must be considered with some qualifications when a new road is being built. The employé cannot complain of the imperfect condition of a road he is employed to assist in making perfect. He must take the risks naturally incident to such employment. He assumes greater risks upon such a road than upon a completed one, where he might expect that the track was clear and all obstructions removed."

In the case at bar the plaintiff was in the discharge of the duties incident to his employment. He was performing them in the usual way they are performed when operating cars upon the main line. The accident occurred upon the permanent track of an old road. The plaintiff claimed, and the jury found, that he knew nothing of the existence of this dangerous structure, either from observation or from having been warned of its existence. The testimony of the plaintiff brought the case within the general rule of a safe place in which to work. The judge carefully laid down the rules of law which should govern the case. I think the judgment should be affirmed.

MONTGOMERY, J. I think the question of assumed risk a proper one for the jury.

ON REHEARING.

LONG, J.    A motion for rehearing has been granted in this case; and, upon further consideration, we are now satisfied that the fish-chute complained of abuts upon a part of the main track, and not upon the side track, as held in the former opinion, and that such main track upon which the fish-chute abuts is not within the yards of the defendant company.    The rule is very different than where such obstruction abuts upon a side track.    Such conveniences near side tracks, or abutting on them, are usually necessary for the conduct of railroad business, and, in making up trains, brakemen and switchmen must be on the lookout for them; while, where they abut on the main track, and not in yards where trains are usually made up, servants of railroads may expect that such obstacles will not be placed in so close proximity to the track as to make them dangerous.    The plaintiff was not familiar with the surroundings, and had had no opportunity to make himself familiar with them.    The rule might be different had he been familiar with the position of the chute.    For these reasons, the judgment must be affirmed.

The other Justices concurred.