JOHN IRVINE, ADMINISTRATOR, ETC., V. THE FLINT &
PERE MARQUETTE RAILROAD COMPANY.

*Railroad companies—Negligent loading of cars—Evidence—Contributory negligence.*

1. In an action against a railroad company for negligence, it appeared that coal-cars, boxed in to the height of from two to two and one-half feet, but with a space about 15 inches in depth across the brake end of each car for the use of the brakeman, were loaded with lumber, which was piled to the height of from five to six feet from the car floor, and extended beyond the boxes, from eight inches at the top of the box to 18 inches at the top of the lumber, and beyond the end of the car, projecting further as the height increased, until it left a space between the lumber of but 15 inches on its surface, the space reserved for the brakeman being partially covered. And it is held that the jury were justified in finding the cars to have been improperly loaded.

2. Where the declaration in a negligence case against a railroad company alleged it to be the duty of the defendant to see that its cars, on which plaintiff was a brakeman, were properly loaded with lumber, so as not to imperil the lives of its employés, and the testimony tended to show that they were so loaded as to increase the hazard of braking them, and that no provision was made by the defendant for their inspection, the jury are justified in finding that there was no inspection.

3. The following propositions are summarized from the opinion of Mr. Justice McGRATH:

   *a*—Servants assume the ordinary risks of their employment, but not those extra hazards which spring from the failure of the master to exercise reasonable care in providing such rules and regulations for the conduct of his business as to afford his servants reasonable means of protection.

   *b*—A servant is not negligent in presuming that his master has performed his duty.

   *c*—In determining the question of the contributory negligence of an operator whose duty lies in the line of danger, all of the circumstances must be considered, and particularly those exigencies which render the prompt performance of his duty necessary.

Error to Saginaw. (Edget, J.) Argued June 3, 1891. Decided December 23, 1891.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*W. L. Webber,* for appellant.

*Leland & Aldrich,* for plaintiff.

McGRATH, J. This is a case for negligence.

Plaintiff's intestate was killed while braking upon defendant's road. It was alleged that the cars were improperly loaded; the lumber with which they were loaded being projected over the ends of the cars. The declaration alleges that—

"It became and was the duty of said defendant to see that such cars should be so loaded that the employés of defendant could, with reasonable safety to themselves, go upon and over such cars, and set or loosen or tighten the brakes on same when so loaded, if it became necessary for such employés to do so in the discharge of their duties; and it further became and was the duty of said defendant to carefully and diligently inspect any such cars after being loaded, and before attempting to transport the same over any part of its said railroad or the branches or side tracks thereof, to see that they were so loaded that the employés of the defendant could with reasonable safety to themselves go upon and over such cars, and set or loosen and handle the brakes and other appliances for working such cars."

The testimony tended to show that the cars used were coal-cars, boxed in to the height of from 2 to 2½ feet. The boxes did not cover the entire floor of the car, but left a space about 15 inches in depth across the brake end of each car, for the use of the brakeman. The lumber was piled on the cars to the height of 5 or 6 feet from the car floor, and extended beyond the boxes, from

89 MICH—27.

8 inches at the top of the box to 18 inches at the top of the lumber, and beyond the end of the car, projecting further as the height increased, until it left a space between the lumber of but 15 inches on the surface of the lumber. The space left on the car for the brakeman was partially covered. The jury were clearly justified in finding that the cars were improperly loaded.

The next question which presents itself is, were the cars inspected? If they were, or if the company provided the means for their inspection by a fellow-servant, and the inspector neglected his duty, then there could be no recovery. The head brakeman testifies as follows:

"*Q.* Did the company at that time ordinarily have car inspectors at the dock to inspect the cars after they were loaded?

"*A.* Well, the car inspectors are around there.

"*Q.* Were they there at the dock to inspect these cars?

"*A.* I couldn't say.

"*Q.* If these cars, or any cars loaded at the dock, were inspected, do you know of it?

"*A.* Well, if they are broken I do.

"*Q.* Well, do you know of any car inspectors being upon that dock inspecting cars after they were loaded with lumber, to see whether they were safely loaded to handle or not?

"*A.* No, sir; I couldn't say—I didn't be there all the time, nor any time, hauling these cars out—whether they were inspected or not. It was not a part of my duty to see that no cars were moved excepting such as were properly loaded."

The inspectors referred to by witness in answer to the first three questions were evidently the car inspectors, and not inspectors appointed to look after the loading of the cars. If there were no inspectors,—no persons whose duty it was to inspect,—it was not necessary to prove there was no inspection. The declaration alleged it to be the duty of the company to see that the cars were

properly loaded, so as not to imperil the lives of its employés. The testimony tended to show that the cars were so loaded as to increase the hazard of braking them, and, in addition, that no provision was made by the company for their inspection; and the jury were justified in their finding that there was no inspection.

Servants assume the ordinary risks of their employment, but not those extra hazards which spring from the failure of the master to exercise reasonable care in providing such rules and regulations for the conduct of his business as to afford his servants reasonable means of protection. It is as much the duty of the company to see that cars are so loaded that brakemen will have reasonably safe access to the brakes, and an opportunity for the discharge of their duties, as it is to see that proper appliances are provided. *Railway Co. v. Hall,* 78 Tex. 657 (15 S. W. Rep. 108); *Byrnes v. Railroad Co.,* 113 N. Y. 255 (21 N. E. Rep. 50).

But it is urged that the work of shunting these cars was done in the day-time, and the defects, if any, must have been apparent to the deceased, and there is no evidence that he made any protest or objection.

The question of contributory negligence was not raised in the case. At the close of plaintiff's testimony, counsel for defendant made the following request:

"May it please the court, we ask that the case be disposed of. There has been no proof introduced here tending to show any negligence on the part of the defendant."

The trial judge instructed the jury upon this point as follows:

"If the deceased, in the exercise of ordinary care upon his own part, could see that the cars were so loaded as to be unsafe for him to go between the cars and set this brake, while the cars were in motion, and he took upon himself the risk of going between the cars, if he suffered

injury he contributed towards the occurrence of the accident, and plaintiff cannot recover."

And again the court said:

"If the deceased could have observed the alleged dangerous condition of the car, and voluntarily placed himself in such position that the accident was sustained, then the plaintiff cannot recover."

Even though this question had been raised, there is no proof that decedent saw these cars before he went to brake them. These cars were attached to a train in which there were several other cars, known as "flat-cars." The cars were taken but a short distance,—about 10 carlengths,—and kicked in upon a side track. There were no other cars kicked in; hence there were no other brakes. Other cars were standing on this side track, one of which was a box-car, which was being unloaded. A witness says:

"There were some men unloading a box-car on this same track, shoveling some coal out. That was the idea in stopping this car, so it wouldn't shove this car out of place. That car could be seen from the switch. The cars were being shoved back towards this side track, very slowly."

As soon as these two cars were upon the switch, the coupling-pin was drawn, and they were allowed to run wild. The head brakeman says:

"Irvine and I went on this train to brake the cars. That was our duty there. I stood on a flat-car. I saw Irvine on one of the lumber-cars, just before those cars went upon the side track. There was no other person but Irvine on the lumber cars."

A servant is not negligent in presuming that his master has done his duty. He was not, therefore, negligent in failing to examine the cars, to see if his way was clear and safe, before it became necessary to brake them. When these cars were kicked in upon the side track they

were moving slowly.    It may not have been necessary to apply the brakes at all, except for the presence of the other car, which was being unloaded.    It became necessary to apply the brake.    He starts to do his duty, and discovers the dangerous situation.    What was his duty then? What would a prudent brakeman have done under such circumstances?    Permit the two cars to crash into the other car, and endanger the lives of those at work there, or endeavor to stop his car, and avert that danger? Whom could he at that time complain or protest to? In determining the question of contributory negligence of an operator whose duty lies in the line of danger, all the circumstances must be considered, particularly those exigencies which render the prompt performance of his duty necessary.    An engineer ought not to be charged with negligence because he fails to abandon his engine between two stations when he first discovers a defect which increases the hazard of its operation.

The judgment is affirmed, with costs to plaintiff.

Morse and Long, JJ., concurred with McGrath, J.

Grant, J. (*dissenting.*)    The deceased, an unmarried man, was a brakeman and switchman, and had been in the defendant's employ for about five years.    At the time of his death he belonged to a switching crew of three men, who were engaged in switching cars of lumber from a low track running down to the level of the Saginaw river up to the grade of the railroad, and placing them upon a side track that they might be put into trains for transportation.    Empty cars were placed upon this low track, and were loaded by the owners of the lumber from scows or lighters.    When loaded, they were taken by the defendant, and placed upon the side track.    The loaded cars were pulled up to and beyond the side track, when the engine backed them up, until sufficient

momentum was imparted, and they were then uncoupled from the other cars, and run in onto the side track. The operation was called "kicking in." At the time of the accident two cars loaded with lumber were kicked in upon the side track. The deceased and the foreman of the crew were upon the cars, the deceased being between the two cars, which were moving, as expressed by one of the witnesses, "no faster than a man could trot." In some manner the brake-staff was broken, and the deceased fell between the cars, and was instantly killed. He had been employed in this business for little over a month previous to the accident, during which time cars were daily loaded with lumber and placed upon the side track, sometimes as many as 15 in a day.

Two grounds of negligence are alleged, viz:

1. Failure to inspect the cars, to ascertain if they were properly loaded.

2. That the lumber was improperly loaded, in that the lumber projected over and beyond the ends of the car, and offered no opportunity in the space between the two cars to properly set the brake without accident in the exercise of care on the part of the brakeman.

The plaintiff introduced no evidence of a failure to inspect, and the learned circuit judge should have eliminated that question from the consideration of the jury. Upon this point he charged them as follows:

"There is no proof in the case, one way or the other, whether the inspection of these cars was had or not. That is only to be inferred from the fact that the cars were loaded at the ship, and were subsequently transported by the company.   *   *   *   If due care was exercised by the inspectors, the company is not in fault."

The failure to inspect cannot be inferred from this fact alone. If inspection were necessary, the presumption is that this duty was performed, not that it was unperformed. It was therefore incumbent on the plaintiff to

prove this violation of duty if he sought to recover in consequence of it. This is the uniform rule, and in the present case imposes no hardship on the plaintiff, for he cannot and does not claim that such evidence was not within his reach.

The defendant introduced no evidence, and it appears from the plaintiff's evidence that these cars were loaded in the customary manner. The only evidence upon this point is that of Galbraith, the switchman, who testified that it was an every-day occurrence to load lumber with the ends projecting over the ends of the box more or less, and had been the custom for a long time,—as long as he had been upon the railroad. This witness further testified that the last time he saw deceased alive was on top of the car of lumber, and that he did not consider it dangerous to go upon the car where deceased went, and turn the brake to stop the car, whether he went on the car from the top or from the ground. It may have been negligence as to one unfamiliar with the customary manner of loading the cars thus to load them, and there was evidence tending to show that it was; but the work was done in the day-time, and the defects, if any, must have been apparent to the deceased during his employment, and there is no evidence that he made any protest or objection. It was evidently considered safe by the members of the crew to which deceased belonged, for they never made any objection thereto. The plaintiff, who was the father of the deceased, was a railroad man, familiar with the loading of cars with lumber, saw these cars just after the accident, and, after describing the manner in which they were loaded, gave the following testimony:

"*Q.* Do you say they were loaded in a dangerous way?

"*A.* Well, it wouldn't appear dangerous if one was

to stand looking. If there was no brake there to hold, it might appear dangerous. If there was anything to take hold of, it wouldn't appear dangerous.

"*Q.* There was a brake to take hold of there?

"*A.* Yes; it wouldn't appear dangerous. No.

"*Q.* Properly loaded, weren't they?

"*A.* Well, if everything stood well, I believe one would be safe enough to go on."

If the situation was safe with the brake-staff and wheel in position and sound, how can the defendant be charged with negligence in piling the lumber over the box? There was no apparent defect in the brake, such as to charge the defendant with knowledge thereof. According to the testimony of this witness (and there is none to controvert it), the situation was, to all appearances, safe. The utmost that can be claimed, then, is that the defendant should have provided against the contingency of the breaking of the staff. But this was unexpected and unusual, and no one is able to account for it. Employers are not required to guard against all possible accidents, but only against those which reason and experience have shown are liable to occur. When an employé in the performance of his duty enters into a place of apparent safety, and is injured by the breaking of a piece of machinery in the procuring or making and inspection of which the employer has exercised proper care, no liability can attach to him.

The only witness who saw the deceased between the cars as they were kicked back testified that he saw the deceased let go of the brake, go to the opposite side of the car, look out after the other switchman, who had jumped off the car, then go back to the brake again, take hold of it, and begin to put the brake up. The deceased then went out of witness' sight, and he did not see him until after the accident. He also testified:

"A man could pass between the brake and the lumber

on the car that the brake was on. There was enough space for the man to pass between the brake and the lumber of the hind car. I saw them going and coming between the brake and the lumber of the hind car."

Sufficient space was therefore left between the two cars for the deceased to pass from one side to the other. It is therefore mere conjecture how the brake-staff was broken, and how the accident happened. It is well settled that the mere proof of an accident is not sufficient to establish negligence. There must be circumstances not only showing negligence on the part of the defendant, but also that the injury was the probable result of the negligence complained of, and that the deceased himself was free from negligence. Plaintiff's counsel, in their brief, say:

"It appears that plaintiff's intestate went down from the top of the cars, and set the brakes in accordance with his duty, and that *in some way* the brake-staff broke, and plaintiff's intestate, being unable to save himself and to secure a firm foothold, on account of this improper loading of the cars, was thrown between them and killed."

As already shown, whatever danger there was in consequence of loading the lumber over the box, was assumed by the switching crew, of which the deceased was one, for none of them had considered it of sufficient importance to protest. It must therefore follow that the only defect contributing to the accident for which the defendant could be held liable would be a defect in the brake-staff, which the defendant knew or should have known. But no defect is shown in this staff, and the cause of its breaking is entirely unexplained. It is further manifest, assuming as true the testimony of the witness who saw the deceased at the brake in the act of turning it shortly before the accident, that the breaking of the staff was the immediate cause of the accident. This was evidently the theory upon which the plaintiff planted his suit in

his original and in his first amended declaration, although in both he alleged the improper loading of the cars. Plaintiff went to trial on the first amended declaration, but was unable to sustain his allegation of a defective brake. He thereupon submitted to a non-suit, with leave to move to set it aside. This non-suit was subsequently set aside, and plaintiff filed another amended declaration, omitting any allegation of a defective brake, and setting up more fully this alleged negligent loading of the cars. In my judgment, a defective brake could afford the only basis for a recovery in this suit.

The evidence further shows that it was usual in braking on these cars for the brakeman to stand with one foot on one car, and the other foot on the other, but how the deceased was standing at the time of the accident is the subject of mere conjecture.

It is said that the projection was greater at the top than at the bottom of the piles. This is not counted upon as negligence, but it might be competent to show it as one of the surroundings of the situation. The jury could not well have found under the evidence that the projection at the top was so much greater as to add to the danger. The testimony of the plaintiff's witnesses on this point is conflicting. Galbraith testified that it was not greater at the top. One Mooney, who measured the distance the lumber projected over the box, stood up between the cars from which the deceased fell, and evidently made a careful examination, was not questioned upon this point. He said the lumber was piled irregular, some sticking over a little more than others. One McDavitt said the lumber "slanted a little towards the top, so that at the top the piles of lumber were about 15 inches apart." One Bartley said: "As the lumber was piled to the top it leaned in a little bit, if anything." This comprises all the testimony on this point, and is.

not seriously contended to have any bearing on the case, and is not mentioned in plaintiff's brief.

The work in which the deceased was engaged was of a very dangerous character. The dangers incident to climbing up and down between these cars were incident to the work and were assumed by the deceased. It is common knowledge that familiarity in such work breeds contempt of danger, and persons engaged in it often take risks which common prudence would forbid. It is therefore a reasonable rule of law that one claiming damage for injuries received must show himself free from fault. The conduct of the deceased just prior to the accident was seen by no one. We can only conjecture what it was. But the law will not sustain verdicts based upon conjecture.

This accident, like many others, was indeed unfortunate and distressing, but courts cannot close their eyes to those well-settled rules of law which must be implicitly followed in order to protect the rights of all citizens alike. After repeated and careful examinations of the record in this case and the briefs and arguments of counsel, I am unable to find any legal basis for holding the defendant liable.

Judgment should be reversed, and a new trial ordered.

CHAMPLIN, C. J. I cannot agree with the opinion expressed by the majority of the Court. Conceding, for the sake of the argument, that the defendant company owed a duty to its employés to inspect its cars laden with lumber to see if they were loaded in such manner as to be safe for their servants in performing their work, yet I do not think a liability would attach in a case like this, where the defect in the loading, if it was a defect, was apparent to any one possessed of sight and sense, and where it was apparent to plaintiff's intestate. It comes

within the principle that when the risk is obvious and extraordinary the servant is not excused from assuming it.

The judgment should be reversed.