CRISTANELLI *v.* SAGINAW MINING CO.

1. MASTER AND SERVANT — INJURIES TO SERVANT — PLEADING — NEGATIVING DEFENSES—ASSUMPTION OF RISK.

In an action for injuries to a servant, an allegation in the declaration that the servant was without fault sufficiently negatives his knowledge of the danger and consequent assumption of the risk.

2. SAME—DUTY OF MASTER—SAFE PLACE TO WORK.

It is the master's duty to provide the servant with a safe place to work, and, when the service required is of a particularly dangerous character, it is his duty to make reasonable provision to protect the servant from the dangers to which he is exposed while engaged in the discharge of his duty.

3. SAME—ASSUMPTION OF RISK—KNOWLEDGE OF DANGER—BURDEN OF PROOF.

Where a servant shows that he was injured in consequence of an unusual risk due to his master's negligence, the master has the burden of showing that the servant knew of the unusual danger.

4. SAME—RISKS ASSUMED.

Servants assume the ordinary risks of their employment, but not those extra hazards which spring from failure of the master to exercise reasonable care in providing necessary rules and regulations.[1]

5. SAME—DUTY OF MASTER—PROTECTION OF SERVANT.

When a master orders his servant into a situation which may become dangerous by the starting of machinery, or the act of other servants, it becomes the duty of the master to guard against such contingencies.[2]

6. SAME—ASSUMPTION OF RISK—CONTRACT—REQUISITES.

The assumption by a servant of the risks of his employment is a matter of contract and must be founded upon his knowledge, either actual or constructive. of the risks claimed to have been assumed.

[1] As to duty of master to promulgate rules for the safe conduct of his business, see note to *Nolan* v. *New York, etc., R. Co.* (Conn.), 43 L. R. A. 305.

[2] As to injury received in obeying a direct command, see note to *Dallemand* v. *Saalfeldt* (Ill.), 48 L. R. A. 753.

7. SAME—PLEADING—ASSUMED RISK.

A declaration against a mining company for the death of a servant caused by the fall of a skip while being loaded with machinery at the collar of the shaft, the negligence alleged being failure to promulgate a rule for notifying the engineer when such work was in progress and requiring him to remain at his post and keep the drum in gear with the steam cylinders to prevent such an accident, is not demurrable as showing that deceased assumed the risk, where there is no averment from which it can be inferred that deceased knew or should have known of the lack of such a rule.

8. SAME—RISKS ASSUMED.

The servant of a mining company has a right to assume that his master has done all things, including the promulgation of adequate rules, necessary to secure his safety in going onto the skip to assist in loading heavy machinery thereon.

9. SAME—UNFORESEEN DANGERS—MASTER'S NEGLIGENCE.

The risks which the servant assumes are only such as are directly connected with his work, and not unforeseen and unexpected dangers arising at a distance from his work, because of the master's negligence, and as to which his surroundings would not in themselves warn him.

10. SAME—PLEADING—DECLARATION—ISSUABLE FACTS.

In an action against a mining company for the death of a servant caused by the fall of the skip while being loaded with heavy machinery at the collar of the shaft, a declaration sufficiently pleading the issuable facts whether defendant was negligent in failing to promulgate a rule for notifying the engineer when such work was in progress and requiring him to remain at his post and keep the drum in gear to prevent such an accident, and whether such negligence was the proximate cause of the death, is not demurrable for failure to allege whether or not the foot brake was set, since such fact is not issuable.

11. SAME—PLEADING—NEGATIVING DEFENSES—NECESSITY.

In an action against a master for the death of a servant, plaintiff is not obliged to negative in his declaration every fact which would tend to establish defendant's freedom from negligence.

12. PLEADING — DECLARATION — MATTERS OF EVIDENCE — NEGLIGENCE.

When plaintiff properly avers defendant's negligence, it is not essential, nor, indeed, prudent, to set out the facts which go to establish it.

13. MASTER AND SERVANT—DEATH OF SERVANT—PLEADING—SUF-
FICIENCY—NEGLIGENCE.

In an action against a mining company for the death of a ser-
vant caused by the fall of the skip while it was being loaded
with heavy machinery at the collar of the shaft, a declara-
tion alleging defendant's duty to hold the skip securely at the
collar of the shaft, the necessity, as defendant conducted its
business, of keeping the drum in gear with the steam cylin-
ders, and the engineer at his post for that purpose, and
that, in consequence of the absence of any rules, the engineer
left his post, the drum became ungeared, and the cable un-
wound causing the skip to fall, sufficiently alleges how the
skip or drum became loose and what caused the skip to de-
scend.

14. SAME—PLEADING—PROXIMATE CAUSE OF INJURY.

Such declaration sufficiently shows that defendant's negli-
gence in failing to promulgate necessary rules was the proxi-
mate cause of the injury.

15. SAME—PLEADING—DUTY OF MASTER.

Allegations showing the necessity of keeping the drum in gear
with the steam cylinders of the hoist to keep the cable from
unwinding and thus allowing the skip to descend; that the
only way to accomplish this with the apparatus in use was by
the engineer remaining at his post and holding the friction
lever in place by hand; that the engineer was required to do
all the work about the engine house, including replenishing
the fire at times when, without his knowledge, heavy ma-
chinery was being loaded upon the skip; sufficiently show
the duty of the mining company to promulgate some rule
providing for notice to the engineer when heavy machinery
was to be loaded upon the skip by men working thereon.

16. SAME—RISKS ASSUMED.

The servant of a mining company ordered to assist in loading
heavy machinery upon a skip in the mining shaft has a right
to assume that all needed help is being employed in the en-
gine house, so that he may with safety go upon the skip as
ordered, or that, in lieu thereof, all necessary and proper
rules for the safe conduct of the work have been promul-
gated.

17. SAME—PLEADING—BREACH OF DUTY.

An allegation of defendant's duty to employ sufficient men in
the engine house to perform the work in safety, the fact that
it required the engineer to do all the work in the engine
house, including replenishing the fire, the sending of de-

ceased upon the skip under the circumstances, and its fall in consequence of the engineer leaving the engine to replenish the fire, sufficiently charges a breach of the duty to employ sufficient men.[1]

18. SAME—PROXIMATE CAUSE OF INJURY.

An allegation that "by reason of the negligence aforesaid the said skip began and continued uncontrolled to descend," etc., killing deceased, sufficiently shows that defendant's negligence in failing to employ sufficient men was the proximate cause of decedent's death.

19. SAME—CAUSE OF ACCIDENT.

An allegation that unless the friction lever is held over by hand, so as to keep the drum in gear with the cylinders while the skip is being loaded with heavy machinery, the lever will work loose and allow the cable to run out uncontrolled, and the skip to descend, and that because of having insufficient help the engineer was obliged to leave the lever while fixing the fire, in consequence of which the lever worked loose, etc., sufficiently shows what caused the skip to get loose and descend.

20. SAME—DUTY OF MASTER.

Allegations of facts showing the necessity and practicability of an attachment to hold the friction lever in place while the engineer was engaged in other duties sufficiently charge the duty of providing such an attachment, since it is sufficient if the duty may be implied from the facts alleged.

21. SAME—NECESSITY OF APPLIANCE.

The necessity of the appliance being obvious, it was not necessary to allege the general use of such an appliance.

22. SAME—KNOWLEDGE OF CO-EMPLOYÉ—ISSUABLE FACT.

A count framed upon the neglect of duty in failing to provide an attachment to hold the friction lever in place while the skip was being loaded is not faulty for failure to allege whether the engineer knew the skip was being loaded, the fact not being issuable under the theory of the count.

23. SAME—CAUSE OF DEATH.

Plaintiff having charged defendant with negligence in failing to provide the attachment as alleged, it is incumbent upon him to prove the negligence charged, and that it was the proximate cause of the injury, but he is not required to negative in his declaration all other possible causes of the injury than the one alleged.

[1] As to master's duty to employ an adequate number of servants, see note to *Smith* v. *St. Louis, etc; R. Co.* (Mo.), 48 L. R. A. 392.

24. SAME—FELLOW-SERVANTS.

The engineer of a mining hoist, in so far as it is his duty to keep the place safe, is not the fellow-servant of an employé engaged in loading machinery upon the skip at the collar of the shaft.

25. SAME—CONCURRING CAUSE.

If the negligence of defendant in failing to provide the attachment to keep the friction lever in place contributed to the injury, the fact that the engineer was negligent in leaving the lever at the time, which negligence contributed to the injury, would at most be a concurring cause, and would not defeat the declaration or affect its sufficiency

26. SAME—CAUSE OF ACCIDENT.

A count showing the necessity and the lack of an attachment for holding the friction lever in place while the engineer was required to be away from the hoist, and his absence, in the performance of his other duties, at the time of the injury, sufficiently shows the immediate cause of the fall of the skip.

27. SAME—PROXIMATE CAUSE OF INJURY.

An allegation that "because of the negligence aforesaid" the skip began and continued uncontrolled to descend, etc., sufficiently shows that the negligence charged was the proximate cause of the injury.

28. SAME—DUTY OF MASTER—BREACH OF DUTY.

A count alleging that it was the duty of defendant to securely keep the skip in place at the collar of the shaft while employés were upon the skip loading it, and defendant's failure to furnish its employés with a safe place to work while they were so loading the skip, etc., sufficiently alleges the duty of defendant, and a breach thereof

29. SAME—ISSUES AND PROOFS.

The count, based upon defendant's negligence in not holding the skip securely in place at the collar of the shaft while deceased was working upon it, and in allowing it to run away and cause his death, puts in issue all the circumstances tending to prove guilt in that respect without special allegations.

Certiorari to Dickinson; Stone, J. Submitted June 16, 1908. (Docket No. 111.) Decided October 5, 1908.

Case by Stefano Cristanelli, administrator of the estate of Stefano Cristanelli, deceased, against the Saginaw

Mining Company for the negligent killing of plaintiff's intestate. There was an order overruling a demurrer to certain counts of the declaration, and defendant brings certiorari. Affirmed.

*C. T. Winegar* (*Rubens, Fischer & Mosser,* of counsel), for appellant.

*Don Cameron* (*H. O. Fairchild,* of counsel), for appellee.

MOORE, J. This case is before the court upon the return to the writ of certiorari under the provisions of Act No. 310, Pub. Acts 1905. Suit was commenced by declaration. The defendant filed its plea of general issue to the first count, and, as to the remaining four, filed general and special demurrers to each count. The demurrers were overruled. The defendant filed exceptions.

We do not think it necessary to set out these counts in full. The claim of counsel sufficiently appears in the opinion referred to later. Counsel in a very able brief elaborates each of his propositions, and argues them at considerable length. The trial judge also listened to careful arguments, and, when he overruled the demurrer, he filed his reasons for doing so in an opinion which is so careful and learned that we cannot do better than to adopt it in disposing of the case. It is as follows:

" Second Count—Second Objection. Count shows that deceased assumed the risk.

" This objection is common to all of the counts demurred to. This point involves the position of defendant's counsel that the declaration is faulty, in that it should have negatived, by proper averments, the presumption that the deceased assumed the risk, or that he was bound to know the risk, and therefore assumed it. While it must be conceded that the rule is different in some States, it has been held in this State that a declaration for negligent injury is not demurrable for failure to state that the injured person did not know of the danger,

if it does aver that he was without fault. *James* v. *Mining Co.*, 55 Mich. 335. That case was in the Supreme Court upon writ of error after verdict, but on page 338 Mr. Justice CAMPBELL, speaking for the court, said:

"'The declaration was demurred to, originally, on the single ground that it did not aver that the dangerous condition of the premises was unknown to plaintiff's intestate in season to have avoided the danger. The declaration, however, avers expressly that he was without fault, and this would cover want of knowledge, provided want or knowledge would be decisive. On the trial of such a case proof of knowledge, under such circumstances as to place the intestate in fault by reason of it, might be a complete defense. But it is not necessary here to decide whether a man having some knowledge of danger may not, nevertheless, be blameless when incurring it in the course of employment at which he is set, or must always be deemed negligent when doing so; because an allegation of entire want of fault is as broad as it could well be made.'

"This case is also instructive upon other points involved.
"In *Dewey* v. *Railway Co.*, 97 Mich. 339 (16 L. R. A. 342, 22 L. R. A. 292), Mr. Justice McGRATH said:

"'The rule that it is the master's duty to provide the servant with a safe place to work, and, when the service required of an employé is of a particularly dangerous character, it is the duty of the master to make reasonable provision to protect him from the dangers to which he is exposed while engaged in the discharge of his duty, is not a new rule.'

"It is true that this was said in a dissenting opinion; but there is no doubt of the correctness of the doctrine. The same doctrine is recognized, and the *James Case* cited, in *Anderson* v. *Railroad Co.*, 107 Mich. 601.
"In *Boman* v. *Iron Co.*, 147 Mich. 181, it was alleged as error because this court instructed the jury as follows:

"'A person, when employed and instructed to commence work at a particular place, substantially as in this case, is under no obligation, in order to protect himself from the charge of contributory negligence, to first go all over the building or plant and make himself familiar with each piece of machinery, and the danger he may incur in case he comes in contact with it in its then condition.'

"But the court in the closing sentence of the opinion approved the doctrine as well settled.
"Where a servant shows that he was injured in conse-

quence of an unusual risk due to his master's negligence, the master has the burden of showing that the servant knew of the unusual danger. *Swoboda* v. *Ward,* 40 Mich. 420; *King* v. *Lumber Co.,* 93 Mich. 183.

"Servants assume the ordinary risks of their employments, but not those extra hazards which spring from the failure of the master to exercise reasonable care in providing such rules and regulations for the conduct of his business as to afford his servants reasonable means of protection. *Irvine* v. *Railroad Co.,* 89 Mich. 416; *Harrison* v. *Railroad Co.,* 79 Mich. 420 (7 L. R. A. 623); *Swick* v. *Cement Co.,* 147 Mich. 454, 462, et seq., and cases cited.

"When the master orders the servant into a situation which may become dangerous by the starting of machinery, or the act of other servants, it becomes the duty of the master to guard against such contingencies. *Kinney* v. *Folkerts,* 78 Mich. 687; *Fox* v. *Iron Co.,* 89 Mich. 387; *Kinney* v. *Folkerts,* 84 Mich. 616; *Erickson* v. *Railway Co.,* 93 Mich. 414. Same case, where demurrer was wrongly sustained, 83 Mich. 281; *Shumway* v. *Manufacturing Co.,* 98 Mich. 411; *McDonald* v. *Railroad Co.,* 108 Mich. 16.

"Undoubtedly the rule is that a party suing for a negligent injury must state in his declaration the material facts relied upon as negligent, and prove the same combination of circumstances. *Batterson* v. *Railway Co.,* 49 Mich. 184; *Schindler* v. *Railway Co.,* 77 Mich. 154.

"It seems that our own Supreme Court has by its rulings disposed of every question raised by this demurrer. Upon the general doctrine of a safe place, see *Balhoff* v. *Railroad Co.,* 106 Mich. 606.

"Assumption of risk by an employé is a matter of contract. *Narramore* v. *Railway Co.,* 96 Fed. 301, 37 C. C. A. 499 (48 L. R. A. 68); *Bauer* v. *Foundry Co.,* 132 Mich. 538.

"We are aware that a more technical rule of pleading applies in some States, and this appears by the citation of authorities made by defendant's counsel upon the argument; but in our judgment a more liberal rule applies in Michigan. We must, therefore, adopt the argument of the plaintiff's counsel, adding a few authorities. It is not necessary to allege everything that is to be proved in a case. The rule of pleading differs in the different States. This is recognized by many of the authorities cited by defend-

ant's counsel.   For instance, in *George B. Swift Co.* v. *Gaylord,* 229 Ill. 340, it is said:

"'In some of the States the rule is different from that which prevails in this State.'

"The court then proceeds to state the rule in Illinois. This difference cannot be accounted for upon the ground stated by defendant's counsel because of similar necessary averments as to contributory negligence.   This is sufficiently shown by the language of Justice CAMPBELL in the *James Case,* above cited.   Upon the general question of the assumption of risk, it seems to us that the following authorities are in point:   In *Chicago, etc., R. Co.* v. *Riley,* 145 Fed. 137, 76 C. C. A. 107, it is said by Kohlsaat, J., quoting from *Texas, etc., R. Co.* v. *Archibald,* 170 U. S. 672:

"'But no reason can be found for, and no authority exists supporting, the contention that an employé, either from his knowledge of the employer's methods of business, or from a failure to use ordinary care to ascertain such methods, subjects himself to the risks of appliances being furnished which contain defects that might have been discovered by reasonable inspection.   The employer, on the one hand, may rely on the fact that his employé assumes the risks usually incident to the employment.   The employé, on the other, has the right to rest on the assumption that appliances furnished are free from defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects because of his knowledge of the general methods adopted by the employer in carrying on his business, or because by ordinary care he might have known of the methods, and inferred therefrom that danger of unsafe appliances might arise.   The employé is not compelled to pass judgment on the employer's methods of business, or to conclude as to their adequacy.   He has a right to assume that the employer will use reasonable care to make the appliances safe, and to deal with those furnished relying on this fact, subject, of course, to the exception by which where an appliance is furnished an employé in which there exists a defect known to him, or plainly observable by him, he cannot recover for an injury caused by such defective appliance, if, with the knowledge above stated, he negligently continues to use it.   In assuming the risks of the particular service in which he engages, the employé may legally assume that the employer, by whatever rule he elects to conduct his business, will fulfill his legal duty by making reasonable efforts to furnish appliances reasonably safe for the purposes for which they were intended; and, while this does not justify an employé in using an ap-

pliance which he knows to be defective, or relieve him from observing patent defects therein, it obviously does not compel him to know or investigate the employer's modes of business, under the penalty, if he does not do so, of taking the risk of the employer's fault in furnishing him unsafe appliances. * * * Those [hazards] not obvious assumed by the employé are such perils as exist after the master has used due care and precaution. to guard the former against danger. And the defective condition of structures or appliances, which by the exercise of reasonable care of the master may be obviated, and from the consequences of which he is relieved from responsibility to the servant by reason of the latter's knowledge of the situation, is such as is apparent to his observation.'

"See, also, *Kain* v. *Smith*, 89 N. Y. 375; *McGovern* v. *Railroad Co.*, 123 N. Y. 280.

"The contract relation is dependent upon a meeting of minds as to the terms of the contract; otherwise, there is no contract in that regard between the parties. Assumption of risk, therefore, must be based upon one or both of two facts, either actually known, or which should be known, by the employé: (1) The defect from which the injury arose or by which it was occasioned must be obvious to a person of ordinary prudence and care in the employé's situation; that is, it must be such a defect as would not escape ordinarily careful observation. *Lamotte* v. *Boyce*, 105 Mich. 545, 548; *Bauer* v. *Foundry Co.*, 132 Mich. 540, and cases cited; *Phelps* v. *Railway Co.*, 122 Mich. 171, 175. (2) Or the defect must be actually known. The rule is thus stated in 3 Elliott on Railroads (2d Ed.), § 1269:

"'It seems to us where the employé has knowledge, or is chargeable with knowledge, of the existence and situation of such structures [near railroad tracks], he assumes the risk of dangers from them; for we can see no reason why the general rule that an employé assumes the risk of the dangers of the service does not apply. * * * Some of the courts seem to require proof of actual knowledge in order to exculpate the employer, but we think this view erroneous, for, if the facts are such as make it negligence on the part of the employé not to know, there can be no recovery.'

"This rule is expressly affirmed in *Phelps* v. *Railway Co.*, 122 Mich. 174, 175. The rule was reaffirmed on rehearing in that case, where it is said:

"'The plaintiff was not familiar with the surroundings, and had had no opportunity to make himself familiar with them.'

" This was the basis of a denial of the assumption of the risk by the employé. Can it be said, as a matter of law, from the allegations of the declaration, that the deceased either actually knew or should have known that the defendant had not made and promulgated any rule or given any direction or order in the conduct of its work at the exploration for the notifying of the engineer that the skip was being loaded and that employés were thereon, and requiring the engineer to station himself or remain at the hoist, and apply and keep applied the foot brake and to pull over and firmly hold the friction lever in place, so as to put and keep in gear the drum with the steam cylinders, and was this a danger, under the circumstances of knowledge on his part, as alleged in the declaration, obvious to deceased, or would it not escape ordinarily careful observation by a person situated as the deceased was, with no other knowledge than he had, as shown by the declaration? There is not an allegation in the declaration upon which to base a claim that deceased knew, or should have known, that no such order or direction had been made or promulgated by the defendant. Nor does it appear that he had any opportunity to learn the fact whether there was or was not such a rule, order, or direction, to the engineer. The mere fact that he was sent to do this work on the skip would not charge him with knowledge that no such rule, order, or direction had been given. A rule might have been in force so far as he would know, requiring the person who gave the order for the loading of the skip to notify the engineer of the actual fact of loading, and that men were on the skip, or about to go thereon, and requiring the engineer to remain at the hoist while such loading continued. Nor does it expressly, nor by implication, appear from the declaration that there were not numerous other methods of notifying the engineer of this fact which could not be known to the deceased. For aught that appears, deceased never before assisted in loading the skip, nor was ever in or about the engine house, nor had any knowledge of how the skip was lowered or raised in the shaft or held in place at the collar of the shaft. *James* v. *Mining Co.*, 55 Mich. 335, 345; *Eddy* v. *Mining Co.*, 81 Mich. 548, 555. Of course, the deceased had the right to assume that the defendant had done all things, including the making and promulgation of adequate rules, necessary to secure his safety in going onto the skip to assist in loading heavy machinery thereon.

*Irvine* v. *Railroad Co.*, 89 Mich. 416, 419, 420; *Swoboda* v. *Ward*, 40 Mich. 420, 424; *James* v. *Mining Co.*, 55 Mich. 335, 346. It would seem that the risks which the servant assumes are only such as are directly connected with his work, and not unforeseen and unexpected dangers arising at a distance from his work, because of defendant's negligence, and as to which his surroundings would not in themselves warn him. *Swoboda* v. *Ward*, 40 Mich. 424; *Irvine* v. *Railroad Co.*, 89 Mich. 416.

"Third Objection. Not alleged that the foot brake was or was not set.

"That fact is not an issuable fact in the case, but a mere condition or circumstance in the situation out of which it is alleged negligence arises. The issuable facts in the second count are (1) whether the defendant was guilty or negligent in failing to make and promulgate a rule, order, or direction for notifying the engineer when loading was being done and men on the skip, and requiring him to station himself or remain at the hoist to set the foot brake, and pull over and keep in place the friction lever, so as to keep the drum in gear with the steam cylinders; and (2) whether, if so, such negligence was the proximate cause of the death of the plaintiff's decedent. These issuable facts are alleged in the declaration with sufficient certainty. It is shown by appropriate allegation that the direct and immediate cause of the accident was the working loose of the friction lever so as to allow the drum to become ungeared from the steam cylinders because of the engineer's leaving the hoist to fix his fire while the skip was being loaded with heavy machinery. These are the issuable facts to be proved, and it is not necessary to allege all the probative facts which go to establish these issuable facts. If it be necessary for the plaintiff to establish the fact that the foot brake was on or was not on in order to show that the loosening of the friction lever was the proximate cause of the injury, then perhaps he would have to make that proof in order to establish that defendant's negligence was the proximate cause of the injury. The plaintiff is not called upon to negative in his declaration every fact which would tend to establish defendant's freedom from negligence. This is what defendant's counsel in effect is contending for here. When plaintiff properly avers the negligence, it is not essential that he should set out the facts which go to establish it. Neither is it usual to do so, nor would it

commonly be prudent.    *Lucas* v. *Wattles*, 49 Mich. 380, 382; *Hanselman* v. *Carstens*, 60 Mich. 187, 192, 193; *Sinsabaugh* v. *Brown*, 126 Mich. 538; *Smith* v. *Railroad Co.*, 100 Mich. 148, 153, 154; *Warren* v. *Porter*, 144 Mich. 699, 704; Bliss on Code Pleading (3d Ed.), § 211a,—applied in *Hanselman* v. *Carstens*, 60 Mich. 193. As was said in *Cleveland* v. *City of Bangor*, 87 Me. 259, 268:

"'Everything which induces or influences an accident does not necessarily and legally cause it. It might be the agency, or medium, or opportunity, or occasion, or situation, or condition, as it is variously styled, through or by which the accident happened; but no part of its real and controlling cause.'

"Fourth Objection.    Facts not stated showing how the drum or skip became loose, or what caused the skip to descend.    The immediate proximate cause of the injury not alleged with sufficient definiteness to enable the defendant to demur or prepare for trial.

"It is first made certain by the allegations of the count that to securely hold the skip at the collar of the shaft while it is being loaded with heavy articles, like drilling machines, and men are on the skip assisting in such loading, the drum must be kept in gear with the steam cylinders by pulling over and securely keeping in place the friction lever. It is then made certain that the only way this could be done as the defendant's work was carried on was to have the engineer remain at the hoist, and by hand pull over and hold over the friction lever. It is then shown that Cristanelli was negligently sent onto the skip to load drilling machines, and that because of the absence of any rule, order, or direction notifying the engineer of such loading, and requiring him to remain at the hoist and pull over and hold in place the friction lever, the engineer left the hoist to fix his fire, when the friction lever worked loose, because not held in place by the engineer's hand, the drum became ungeared from the steam cylinders, and the skip began and continued to descend in the shaft with such violence that the cable was unwound and jerked loose from the drum, and the skip dashed to the ground at the bottom of the shaft, killing Cristanelli. It would seem that these allegations, not only sufficiently show how the drum and the skip became loose and what occasioned the skip to descend in the shaft, but what was the immediate cause of injury to the decedent.

"Fifth Objection. It is not shown that the supposed negligence of defendant is the proximate cause of the injury.

"The statement of facts under the preceding objection shows this objection not to be tenable. If necessary, resort may also be had to the argument under the third objection.

"Sixth Objection. No facts alleged casting on defendant the alleged duty.

"An analysis of the allegations of the count casting the supposed duty on the defendant may be stated thus:

"(1) It is set out by adequate allegation that it is necessary when the skip is being loaded with heavy articles, like drilling machines, and employés thereon, that the drum must be put in gear with the steam cylinders of the hoist; otherwise the cable sustaining the skip will run out uncontrolled, to the great peril of any employé who may happen to be on the skip.

"(2) That the only way of doing this is by the engineer remaining at the hoist at such times and putting, and keeping the drum in gear with the cylinders, by pulling the friction lever over and holding it securely in place by his hand while the loading is going on.

"(3) That the engineer does all the work in the engine house, including the replenishing of the furnace fire, which he is required at times to do, when, without his knowledge, heavy articles, such as drilling machines, are being loaded onto the skip, and employés are thereon, assisting in such loading.

"(4) Hence the defendant was under a duty to make and promulgate some rule, order, or direction for the notification of the engineer when heavy articles, such as drilling machines, are being loaded on the skip, and employés are thereon, and requiring him to remain at the hoist and keep the drum in gear with the steam cylinders while such loading is being done. It would seem that this analysis makes it plain that facts are alleged in the count, casting the supposed duty upon the defendant.

"2. Third Count—Second Objection. That deceased assumed the risk.

"The same reply can be made to this objection that was made to the second objection to the second count. There is no intimation of any knowledge on the part of Cristanelli of how the work in the engine house was carried on, or under what rules it was carried on. For aught

he knew, there may have been half a dozen men in the engine house looking after the work there.   He certainly had the right to assume that all needed help was being employed in the engine house, so that he might, with perfect safety, go onto the skip as he was ordered to do by the defendant, or in lieu of such help, that all proper rules and regulations for the safe conduct of the work had been made and promulgated.

"Third and Fourth Objections—are to the same effect —that the defendant is not charged with a breach of the alleged duty in that count stated.

"The duty is set out in the declaration.   In a word, it is to employ a sufficient number of men in the engine house to do the work therein, so that the engineer might remain at the hoist while heavy articles, such as drilling machines, are being loaded onto the skip, and employés are thereon, assisting in such loading, since otherwise the engineer would be required, as defendant well knew, at times when the skip was being so loaded and men were thereon, to leave the hoist to do his other work, including the replenishing of the fire.   The breach is thus stated: That, disregarding such duty, the defendant carelessly and negligently required 'of the engineer alone the performance of all the duties imposed upon him as aforesaid [that is, all the work in the engine house], then and there knowing, as the defendant well knew, that at times while said skip was at the collar of said shaft, and being, without the knowledge of said engineer, loaded with heavy articles as aforesaid, and other employés of the defendant, without the knowledge of said engineer would rightly be at work on or in said skip, said engineer would be required, in the reasonable discharge of the duties devolved upon him by the defendant, to leave the said hoist to perform other duties in or about said engine house demanding his attention, especially the duty of attending to the replenishing of the fire.'   Then set out specifically the negligent sending of the deceased upon the skip to assist in loading thereon heavy drilling machines, the engineer being ignorant thereof, because of which fact he left the hoist to replenish his fire, with the resultant injury to the decedent.

"Fifth Objection.   Not alleged that the foot brake was or was not set.

"This objection is sufficiently considered under the third objection to the second count.

"Sixth Objection. Count does not charge or show facts sufficient to show that defendant's supposed negligence was the proximate cause of the injury.

"This objection does not go to any failure to properly charge negligence, but only that the negligence charged is not shown to be the proximate cause of the injury. It is expressly charged that, 'by reason of the negligence aforesaid of the defendant, the said skip, without any fault or want of care on the part of said Cristanelli, began and continued uncontrolled to descend,' etc., resulting in Cristanelli's death. It certainly appears that defendant negligently required of the engineer the discharge of all the duties in the engine house, knowing that at times while the skip was being loaded at the collar of the shaft the engineer would be required, in the reasonable discharge of his duties, to leave the hoist to replenish the fire, as he did in this case, because of a lack of sufficient men in the engine house to do that work, so that the engineer might remain at the hoist to look after the friction lever, and that, under those circumstances, the defendant negligently sent deceased upon the skip to assist in loading heavy drilling machines thereon. It is alleged that because of this negligence the skip descended uncontrolled to the bottom of the shaft, to the destruction of Cristanelli.

"Seventh Objection. Does not allege what caused the skip to get loose and descend.

"It is certainly alleged that unless the friction lever is held over by hand, so as to keep the drum in gear with the cylinders while the skip is being loaded with heavy articles, like drilling machines, the friction lever will work loose, and allow the cable to run out uncontrolled, and the skip descend. It is also shown that the engineer was required to do all the work in the engine house, including replenishing of the fire and the holding over of the lever, and that to fix the fire he had to leave the hoist and friction lever while the skip was being loaded and the deceased was thereon, and that, because of these facts, the friction lever worked loose, the drum became ungeared from the cylinders, and the cable ran out uncontrolled, and the skip descended.

"3. Fourth Count.

"The second and third objections—assumption of risk and lack of allegation that foot brake was or was not set —are sufficiently considered in discussing the objections to the second and third counts.

"Fourth Objection. Allegations of duty vague, uncertain, and indefinite.

"Where from the facts alleged the duty of the defendant may be implied, that is all that is necessary. *Geveke* v. *Railroad Co.*, 57 Mich. 589, 593.

"(1) It certainly appears that it was necessary to hold the friction lever over in order that the drum be kept in gear with the steam cylinders, and the skip be securely held in place at the collar of the shaft while heavy articles were being loaded onto the skip, and men were thereon.

"(2) It also appears that there was no way of doing this while the engineer was away from the hoist at his other work, about the engine house, including the fixing of the fire, and the skip was being loaded, and men thereon, as there was no appliance, attachment, or mechanism on the lever to hold it over.

"(3) It is also shown that the hoist was so constructed that with slight labor and expense such an appliance might have been placed thereon that would have effectively held the friction lever over and the drum in gear with the cylinders while the engineer was away from the hoist.

"(4) It is also shown that frequently, as at the time of the accident in question, the engineer was required to leave the hoist to do other work about the engine house, particularly to replenish the fire, when the skip was being loaded and the friction lever had to be held over in order that the safety of the employés on the skip should be insured.

"(5) Hence the duty, as the law would imply from the facts alleged, to supply the friction lever with an attachment or device of some kind to hold it over at such times, to the end that the skip be securely held in place at the collar of the shaft while it was being loaded with heavy articles, like drilling machines, and employés were thereon, assisting in that work, and the engineer was away from the hoist doing other duties about the engine house, and could not hold the friction lever over by hand so as to keep the drum in gear with the cylinders. The specific duty alleged in the declaration is 'to furnish to its said employés at such exploration reasonably safe machinery and appliances for the holding of said skip securely in place at the collar of said shaft, and especially when said engineer was engaged in the discharge of his duties away

from said hoist, and could not hold by hand said friction lever over so as to keep said drum in gear with said cylinders as aforesaid, while said skip was being loaded,' etc. Then after stating the breach of such duty, in a general way, as the duty is first stated, the breach is specified particularly to consist 'in that said hoist was not fitted with any attachment, device, or mechanism whereby such friction lever could be held securely in place when pulled over as far as might be and said drum thrown into gear with such cylinders while the engineer was absent from said hoist, and heavy articles were being loaded thereon as aforesaid by such employés.' The word 'thereon' refers back to the word 'skip,' used in the first part of the sentence. We think that when the necessity for a certain kind of appliance, or for an appliance to affect a particular purpose, is made plain by the allegations of the declaration, a general allegation that the defendant was under the duty to furnish reasonably safe machinery and appliances to accomplish such particular purpose is all that is required to inform the defendant of the particular duty he is under in the premises. But here it is plain from the allegations of the declaration that the absence of an attachment, device, or mechanism whereby the friction lever could be held securely in place when pulled over as far as might be and the drum thrown in gear with the cylinders while the engineer was away from the hoist doing his other work was a particular in which the defendant failed in its duty. It is not always necessary to allege the general use or employment of a device or appliance where the necessity for the same is obvious. *Hoyt* v. *Jeffers*, 30 Mich. 181; *Webster* v. *Symes*, 109 Mich. 1; *Keating* v. *Railroad Co.*, 104 Mich. 421. This rule we think is recognized in *McGinnis* v. *Bridge Co.*, 49 Mich. 466, where it is urged that the proposed device might introduce other dangers more serious than those it would guard against.

"Fifth Objection. It is not alleged whether the engineer knew that 'plaintiff' or other employés were loading or about to load articles on the skip, or were likely to be in or about the skip, if such was a fact.

"The death of Cristanelli is alleged in the declaration to have been caused by defendant's negligence and breach of duty in not providing the hoist with an attachment, device, or mechanism to hold the friction lever securely in place after the drum was thrown in gear with the cylinders while the engineer was away from the hoist, engaged

in the performance of other duties, and could not hold the lever so in place by his hand, and then sending Cristanelli onto the skip to load heavy drilling machines thereon. It is incumbent on the plaintiff to prove that defendant was negligent in this respect, and that such negligence was the proximate cause of the death of his decedent. Whether the engineer did or did not know that the skip was being loaded, and that the deceased was thereon or was likely to be thereon, is not an issuable fact to be pleaded. At the very most, it is a mere circumstance or condition in the situation to be considered, perhaps, in determining whether the death of Cristanelli was or was not caused by the alleged negligence of the defendant, as alleged in the declaration. It is not necessary for the declaration to set out all the probative facts entering into the proof of the main issuable fact that the plaintiff has the burden of proving. The fact that the plaintiff must show and prove how and why the deceased met his death in order to show the defendant's negligent conduct in respect thereto does not require him to set out in his declaration all the facts, circumstances, or conditions which go to show such ultimate or issuable fact. The cases cited under the argument relative to whether the foot brake was or was not set are applicable here to show that no such allegation as the one contended for is required. Then, again, the fact whether or not the engineer knew or did not know that the skip was being loaded goes to the question of whether the death of Cristanelli was caused by the negligence of the engineer, instead of the negligence of the defendant, as the declaration alleges. If the plaintiff must establish the fact that the engineer did not know the skip was being loaded, in order that the defendant's negligence be proved as the proximate cause of the injury, then the plaintiff will have to prove that fact; otherwise, not. The fact is entirely immaterial, except as it tends to show that the death of the deceased was not caused by defendant's negligence, but the negligence of a fellow-servant. The contention of defendant's counsel is to the effect that the plaintiff must by his declaration negative the evidence of all other possible causes for the death of plaintiff's decedent than the one he alleges in the declaration. That is not the theory of the declaration, nor would it be good pleading. The plaintiff affirmatively alleges the cause for which the defendant is responsible, and which he proposes to prove, and lets all

others go. He is burdened with the duty to prove that particular cause, and not to disprove all others. Then, again, is it not a question for the jury, under the allegations of the declaration, whether the engineer was or was not justified in leaving the hoist to fix the fire, under all the circumstances as he saw and knew them, and is not that question presented squarely by the allegation of the declaration that 'said engineer was reasonably required, or, in the exercise of ordinary care, believed he was required, in the performance of his said duties, to go and be away from said hoist, and could not hold by hand said friction lever,' etc.? The question there presented is whether the engineer under all the circumstances was 'reasonably required, or, in the exercise of ordinary care believed he was required in the performance of his duties,' to be away from the hoist at that time. The fact whether he knew the skip was being loaded at the time, or that Cristanelli was on the skip, might go to the question of whether he was reasonably required to leave the hoist in the performance of his duties. This would, at most, be the effect of omitting to make the statement that the engineer did not know that the skip was being loaded or that Cristanelli was thereon. These are all questions of fact bearing upon the ultimate question of whether defendant's negligence or the negligence of the engineer was the proximate cause of Cristanelli's death. The engineer was not a fellow-servant of the deceased in keeping the place safe, but even should it affirmatively appear, as it does not, however, but the contrary, that the engineer was negligent in leaving the hoist at that time, still his negligence in so doing would be only a concurring cause with the defendant's negligence in causing Cristanelli's death, and would not defeat the declaration or affect its sufficiency. Whether it was or not a contributing cause, or even the sole cause, is involved in the proof of defendant's negligence as the cause or a contributing cause of the death, as is clearly alleged in the declaration it was. In any aspect of the question, the objection is not well taken. *Town* v. *Railroad Co.*, 84 Mich. 214; *Knapp* v. *Railway Co.*, 114 Mich. 199.

"Sixth Objection. The immediate cause of the descent or falling of the skip is not alleged.

"It appears with sufficient certainty that the cause of the skip falling was the fact that the hoist was not fitted with an attachment, device, or mechanism for holding

the friction lever over while the engineer was required to be away from the hoist, as he is alleged to have been, in the performance of his other duties in the engine house.

"Seventh Objection. No facts are stated showing defendant's supposed negligence to be the proximate cause of the injury.

"This objection does not raise the question whether the 'supposed negligence of the defendant' is not sufficiently alleged. If it be sufficiently alleged, then that it was the proximate cause of the injury is sufficiently alleged, since it is said after alleging such negligence that 'because of the negligence and breach of duty aforesaid on defendant's part such skip unexpectedly and without warning to and without fault or want of care on the part of said Cristanelli, who was then thereon, began and continued uncontrolled to descend in said shaft until it reached the bottom thereof, with such rapidity and violence that all of said cable was unwound from said drum and jerked loose therefrom, and said skip and said Stephano Cristanelli dashed with such violence,' etc.

"Eighth Objection. The allegations as to the immediate cause of the falling of the skip are so vague, uncertain, and indefinite that defendant cannot intelligently prepare for trial.

"This objection is substantially a repetition of the sixth objection, and the answer to that is complete to this.

"4. Fifth Count—Third Objection. The allegations of duty are vague, uncertain, and indefinite.

"It seems to us that these allegations are as certain and definite as they can well be. The duty as alleged is to furnish to defendant's employés a reasonably safe place in which to work while engaged in loading onto the skip heavy articles, etc., and while said employés are thereon for that purpose, 'to the end that said skip be so firmly and securely kept in place at the collar of the shaft while the same was being loaded and such employés or any of them were so in or on said skip, as they were required to be, that it would not * * * unexpectedly give way, and without warning to such employés and with dangerous rapidity descend uncontrolled,' etc. In a word, it is alleged that it was the duty of the defendant to securely keep the skip in place at the collar of the shaft while the employés were on the skip loading it, so that it would not without warning to them unexpectedly and with dangerous rapidity descend uncontrolled in the shaft, to the

great peril of such employés. It would certainly seem that the duty of the defendant in the premises is clearly and sufficiently set out.

"Fourth Objection. The allegations of breach of supposed duty are vague, uncertain, and indefinite, and insufficient to apprise defendant of the precise charge it will be called upon to meet at the trial.

"It is alleged that the defendant, disregarding its duties, did 'carelessly and negligently fail to furnish its said employés a reasonably safe place in which to work while they were loading onto said skip heavy articles as aforesaid, and were * * * on said skip to secure the same thereon, in that said defendant then and there carelessly and negligently failed to so conduct the work at said exploration that said skip would be or was securely kept in place at the collar of said shaft,' and then carelessly and negligently sent the deceased onto the skip while at the collar of the shaft to load two heavy iron drilling machines thereon, 'when and because of the negligence and breach of duty aforesaid on defendant's part,' the accident happened. Certainly the facts which the plaintiff is required to allege and prove, both as to duty and breach of it, are here set forth. It was the defendant's duty to securely hold or keep the skip at the collar of the shaft while deceased was thereon working at the order of the defendant, and it failed in this duty, in that it so conducted the work that the skip was not securely held or kept in place, but allowed to get away and descend uncontrolled in the shaft so that it caused the death of Cristanelli. These are the issuable facts to be proved. How they are to be proved is a matter of evidence entirely. The authorities cited under the third objection to the second count are equally applicable here, and a more extended consideration of them may be of profit. *Lucas v. Wattles*, 49 Mich. 380, is a case in which defendant was charged with lighting a fire on his premises, and so negligently keeping such fire that it extended therefrom to plaintiff's buildings and destroyed them. In another count it was alleged that such fire was so negligently managed that it extended to plaintiff's premises, and destroyed his buildings. There were two other counts equally general. The plaintiff sought to prove that the country in the vicinity of the premises in question was very dry, that there was wild grass and a great deal of brush on defendant's premises, and to trace the fire from

and through defendant's premises to his. The evidence respecting the condition of the premises was objected to as not admissible under the declaration. The objection was overruled, and this ruling was assigned as error. The court, by Mr. Justice COOLEY, said with reference to this assignment:

" 'It is urged that, if there were any special circumstances which would render the setting of the fire negligent, the plaintiff should have set them out in the declaration. We do not think this was essential. It is always necessary that the plaintiff should count on the negligence he relies upon; but, when he properly avers the negligence, it is not essential that he should set out the facts which go to establish it. Neither is it usual to do so, nor would it commonly be prudent.

" 'If it was negligent for the defendant to light a fire at the time and in the place alleged, the circumstances which rendered it so were probably numerous. The very dry condition of the earth, the high wind, the long, dry grass, the exposed stacks of hay and straw, the dry brush scattered about the fields, the want of accessible water, the absence of plowed fields, etc., that might stay the progress of the conflagration, and many other things which might be apparent to the eye of one on or near the ground, might all tend to render caution particularly important. But, if it were necessary to set these all out in the declaration, the plaintiff would be driven to a recital of all the evidence; and this, besides being needlessly burdensome to him, could accomplish no good purpose. When the defendant is notified with what negligence he is charged, he is thereby informed that the circumstances which tend to show that he was or was not wanting in due care in that particular will be in issue; and he must be prepared with evidence respecting them.'

" The rule of this case is expressly affirmed in *Sinsabaugh* v. *Brown*, 126 Mich. 538, 540. So here all the circumstances which go to prove that defendant was guilty in not holding or keeping the skip securely in place at the collar of the shaft while Cristanelli was working on it and in permitting it to run away and cause his death are all put in issue by the allegations of negligence in that respect, and defendant must come to the trial prepared to meet any fact put in proof which will tend to establish the negligence with which it is charged.

" Fifth Objection. It is not alleged wherein defendant failed to provide a safe place for 'plaintiff' to work, nor wherein it failed to conduct the work ' so that said skip would be or was securely kept in place at the collar of the shaft.'

"There is no merit in the objection. It is alleged wherein defendant failed to provide a safe place. The particular in which the place was unsafe is expressly alleged. The skip was not securely held in place at the collar of the shaft while deceased was doing his work therein or thereon, but was permitted to run away and dash him to his death at the bottom of the shaft. The remainder of the objection comes clearly within the rule against pleading evidence, considered at length under the preceding objections. The particulars of the defendant's conduct which go to establish its negligence as stated in the declaration are not required to be set out. These are all matters of proof upon the trial which the defendant must come to the trial prepared to meet as they may be put in evidence. Any fact which tends to show defendant guilty of negligence in not holding the skip securely at the collar of the shaft while deceased was working upon it is provable under an allegation of negligence in the particular stated.

"Sixth Objection. It is not stated that the engineer was at or about the hoist at the time in question.

"The same may be said of this objection as of the last two. Whether the engineer was or was not at the hoist is not the, or an, issuable fact of the count. Would not the plaintiff be permitted under the allegations of negligence in this count to show that the defendant sent the engineer away from the hoist while the deceased was on the skip loading the drilling machines, and that, because of such fact, the skip was not securely held at the collar of the shaft, but permitted to run away and dash Cristanelli to his death at the bottom of the shaft? It would certainly seem that such evidence would tend to prove the act of negligence charged and out of which the injury arose. Would not the plaintiff also be permitted to prove that the engineer was charged with all the duties of the engine house, and not being informed that any loading was going on at the skip, and reasonably believing that he could at the time safely leave the hoist to fix his fire, did so, and because of that fact the skip was not securely held at the collar of the shaft, but permitted to run away and dash Cristanelli to his death at the bottom of the shaft, all because the defendant negligently failed to inform the engineer that it had sent Cristanelli or any other employé onto the skip to work? The proof of these facts would certainly tend to establish the defendant's negligence as alleged in this count of the declaration.

"Seventh Objection. It is not stated whether the foot brake was or was not set.

"We have already considered this objection under the third objection to the second count. Like the objection we have just been considering, it is not an issuable fact in the case, but, at most, only a single circumstance or condition in the situation which may or may not affect the question of defendant's negligence as counted on. That the defendant's negligence as alleged must be established, and that it was the proximate cause of Cristanelli's death, must be proved, and making this proof the fact whether the foot brake was or was not on may become an important consideration.

"Eighth Objection. Facts are not alleged showing the immediate cause of the descent of the skip; nor that the supposed negligence of the defendant in that count alleged was the proximate cause of the injury to plaintiff's decedent.

"The particular in which the defendant was negligent as to the safety of the place in which it set plaintiff's decedent to work is expressly stated. It is alleged that it failed to so conduct its work that the skip would be or was securely kept in place at the collar of the shaft while plaintiff's decedent was working thereon, and 'that, because of such negligence and breach of duty, the skip unexpectedly and without warning to, or without fault or want of care on the part of, said Cristanelli, who was then thereon, began and continued to descend in said shaft uncontrolled,' etc. This count in the allegation of the particulars of the negligence of defendant, and its causal effect, is practically on all fours with the declaration in *Lucas* v. *Wattles*, supra. There one count was that the defendant 'so negligently kept said fire that it extended from his premises to the plaintiff's.' Then again: 'That said fire was so negligently managed by said defendant and his servants that it extended to plaintiff's buildings.' Another count was that 'defendant did negligently permit said fire to pass from his own woods and grounds, to the destruction of the property of the plaintiff.' The particulars in which the defendant was negligent in keeping the fire are not set out in the one count, nor are the particulars in which the defendant negligently managed the fire or permitted it to pass from his woods to the plaintiff's buildings set out in the other counts. Should it then be necessary to set out the particulars in

which the defendant here was negligent in so conducting its work at the exploration as to allow the skip to get away and destroy plaintiff's decedent? We would think not.

"It seems to us that the demurrer should be overruled to each and every of the four counts."

The order of the circuit judge overruling the demurrer is affirmed, with costs.

MONTGOMERY, OSTRANDER, HOOKER, and McALVAY, JJ., concurred.